**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CIGAR ASSOCIATION OF AMERICA,
*et al.*,

          Plaintiffs,

          v.

UNITED STATES FOOD AND DRUG
ADMINISTRATION, *et al.*,

          Defendants.

Civil Action No. 16-1460 (APM)

**DEFENDANTS' RESPONSE TO THE MOTION TO INTERVENE
BY THE AMERICAN ACADEMY OF PEDIATRICS ET AL.**

Six public health groups—already participating in this case as amici—have moved to intervene as Defendants.  They hypothesize that the government will not forcefully defend the rule at issue, given that the agency has sought briefing extensions and extended some compliance deadlines.  But as the prospective intervenors acknowledge, "if Defendants adequately defend the . . . Rule" then intervention may not be "necessary" at all.  Int. Br. 20–21 (ECF No. 36).

Defendants take no position on whether the Court should grant intervention as of right.  Nevertheless, the Court may wish to defer resolution of this question, as it is at least premature to conclude that the government will not adequately represent the interests at stake, and it is not yet clear what claims, if any, Plaintiffs intend to continue pursuing in this litigation.  Defendants also take no position on the alternative request for permissive intervention.  With respect to this question, Defendants note that even if the Court denies intervention, the intervenors may continue to participate in this litigation as amici.  Finally, if intervention is permitted, Defendants

respectfully submit that it should be limited to the submission of summary judgment briefs on any claims Plaintiffs may still wish to press, as explained below.

## RELEVANT BACKGROUND

This case concerns an FDA rule—known as the "deeming rule"—that deems cigars and pipe tobacco (among other products) to be "tobacco products" subject to regulation under Chapter IX of the Federal Food, Drug, and Cosmetic Act.  The deeming rule generally subjects these products to the same regulatory scheme that has applied to cigarettes since the Tobacco Control Act was passed in 2009.  That scheme requires, among other things, that manufacturers register with the FDA, submit listings of their products and ingredients, obtain premarket review of new products, refrain from distributing free samples, and include health warnings on packaging.  The deeming rule was published in May 2016 and took effect in August 2016, although in the preamble the FDA announced lengthy compliance periods during which it did not intend to enforce some provisions.  For example, for most products, the agency did not intend to enforce the premarket review requirement until at least February 2018.[1]

Within months of its issuance, the deeming rule was challenged by manufacturers, trade associations, and consumers in eight separate lawsuits.  In the first, *Nicopure v. FDA*, Judge Jackson recently "uph[e]ld the Deeming Rule" with respect to electronic cigarettes and granted

---

[1] *See generally* FDA, *Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and Cosmetic Act, as Amended by the Family Smoking Prevention and Tobacco Control Act; Restrictions on the Sale and Distribution of Tobacco Products and Required Warning Statements for Tobacco Products*, No. FDA-2014-N-0189, 81 Fed. Reg. 28,973 (May 10, 2016).  While Plaintiffs also challenge a separate FDA rule assessing user fees on manufacturers and importers of cigars and pipe tobacco, because the prospective intervenors state that they "do not intend to take a position on Plaintiffs' challenge to the User Fee Rule," Int. Br. 6 n.6, Defendants do not further address it here.

summary judgment to the FDA.[2]  In another, a motion to dismiss for lack of jurisdiction is

pending.[3]  A third quickly settled.[4]  In the others, including this one, where briefing has not yet

begun or is in its early stages, the parties sought to extend the briefing schedules to allow new

leadership personnel at the Department of Health and Human Services additional time to more

fully consider the issues and determine how best to proceed.[5]

On July 28, 2017, the FDA announced a "new comprehensive plan" for the regulation of

tobacco products.[6]  As part of that plan, the FDA announced, among other things, that:

- The agency intends to issue guidance describing a "new enforcement policy" that would, among other things, extend until August 2021 the compliance period for submitting premarket applications for newly-regulated combustible products such as cigars and pipe tobacco that were on the market as of August 8, 2016, and the agency expects that manufacturers would continue to market the products while those applications are pending.  *Id.*[7]

- The agency intends to issue Advanced Notices of Proposed Rulemaking ("ANPRMs") seeking public comment on, among other things, (a) the role that flavors in tobacco products play in attracting youth and (b) the patterns of use and resulting public health impacts of premium cigars.  *Id.*

---

[2] *Nicopure Labs LLC v. FDA*, --- F. Supp. 3d ---, Nos. 16-878, 16-1210, 2017 WL 3130312, at *1 (July 21, 2017).  *Nicopure*, brought by a manufacturer of e-cigarettes and e-liquids, was consolidated and decided with *Right to be Smoke-Free Coalition v. FDA*, No. 16-1210 (D.D.C.), brought by a coalition of e-cigarette industry trade associations.

[3] *Faircloth v. FDA*, No. 16-5267 (S.D.W. Va.) (e-cigarette consumer and state legislator).

[4] *John Middleton Co. v. FDA*, No. 16-996 (D.D.C.) (cigar manufacturer).

[5] ECF No 40; *see also Sanchez Icaza v. FDA*, No. 16-21967 (S.D. Fla.) (cigar manufacturer); *Cyclops Vapor 2 v. FDA*, No. 16-556 (M.D. Ala.) (e-liquid manufacturers and e-cigarette vendors); *Lost Art Liquids v. FDA*, No. 16-3468 (C.D. Cal.) (e-liquid manufacturer).

[6] FDA, Press Release, *FDA Announces Comprehensive Regulatory Plan to Shift Trajectory of Tobacco-Related Disease, Death* (July 28, 2017), *available at* https://www.fda.gov/NewsEvents/ Newsroom/PressAnnouncements/UCM568923.htm.

[7] This guidance has since been issued and is available at https://www.fda.gov/TobaccoProducts/ Labeling/RulesRegulationsGuidance/ucm557714.htm.

- The agency intends to issue regulations outlining the information it expects to be included in premarket applications and modified risk tobacco product ("MRTP") applications.  *Id*.

The FDA's announcement thus affirmed that the deeming rule remains a key part of the agency's tobacco regulation strategy.  It expressly stated that the FDA's "approach to nicotine must be accompanied by a firm foundation of rules and standards for newly-regulated products," like cigars and pipe tobacco.  *Id*.  And it left the compliance periods for the vast majority of provisions unchanged.  For example, the FDA stated that its approach would "not affect future deadlines for other provisions of the rule, including, but not limited to, required warning statements, ingredient listing, health document submissions, harmful and potentially harmful constituent reports, and the removal of modified risk claims, i.e., 'light,' 'low,' or 'mild,' or similar descriptors."  *Id*.  It likewise stated that this approach would "not apply to provisions of the final rule for which compliance deadlines already have passed, such as mandatory age and photo-ID checks to prevent illegal sales to minors."  *Id*.

After the FDA's announcement, the parties in two other deeming cases—*Sanchez Icaza* and *Cyclops Vapor*—jointly moved for a stay of proceedings.  In each, the plaintiffs noted that the "approach outlined in the FDA's new comprehensive plan affords [them] much of the relief they seek" and explained that a "stay would allow [them] to evaluate whether further litigation is necessary."  *Sanchez Icaza*, No. 16-21967 (S.D. Fla.) (ECF No. 35, ¶ 6); *Cyclops Vapor*, No. 16-556 (M.D. Ala.) (ECF No. 54, ¶ 6).[8]  Similarly, in this case, the parties jointly sought a 30-day extension of the briefing schedule "to consider the consequences of the new comprehensive plan

---

[8] In *Sanchez Icaza*, the court granted the parties' motion to stay, vacated the briefing schedule, and administratively closed the case.  *Sanchez Icaza*, No. 16-21967 (S.D. Fla.) (ECF No. 36).  In *Cyclops Vapor*, the court set the motion for hearing and stayed compliance with briefing deadlines in the meantime.  *Cyclops Vapor*, No. 16-556 (M.D. Ala.) (ECF No. 55).

on this litigation, to discuss ways to reduce the need to litigate some of the issues presented in this case, and, if necessary, to confer regarding the most efficient path forward for presenting any remaining challenges."  ECF No. 40, ¶ 6.

The prospective intervenors here are six public health organizations that joined an amicus brief supporting Defendants in *Nicopure* and that have already been granted leave to file an amicus brief here.[9]  While they recognize that, in *Nicopure*, Defendants "vigorously defend[ed] the deeming rule in full," Int. Br. 7, they suggest that "it is not clear that Defendants' new leadership plans to defend the Deeming Rule at all, let alone defend it in full," given that the FDA has sought briefing extensions and extended some compliance periods, *id*. at 19.  They acknowledge, however, that it may not be "necessary" for them to file a brief in intervention at all, *id*. at 20–21—a determination they could make only "once it is known whether and how Defendants are defending the Deeming Rule," *id*. at 22.

## DISCUSSION

### I.   INTERVENTION AS OF RIGHT

Defendants take no position on whether the Court should grant intervention as of right. In terms of timing, however, Defendants would encourage the Court to defer resolution of this question.  It is not yet clear what claims, if any, Plaintiffs intend to continue pursuing in this litigation.  Further, it is at least premature to conclude that Defendants will not adequately represent the interests at stake—particularly given the proposed intervenors' acknowledgment that intervention may prove unnecessary.  *See, e.g.*, *Alfa Int'l Seafood v. Ross*, No. 17-31, 2017 WL 1377914, at *3 (D.D.C. Apr. 17, 2017) (Mehta, J.) ("[T]he mere change in administration, at

---

[9] Prospective intervenor Campaign for Tobacco-Free Kids filed the motion for leave to file an amicus brief here, indicating that it would invite the signatories to the *Nicopure* brief to join. ECF No. 29, at 2.

least at present, does not support Applicants' assertion that the Federal Defendants'

representation will prove inadequate.").

The prospective intervenors' assertion that Defendants "may seek to weaken or rescind"

the deeming rule in future rulemaking, Int. Br. 7, does not speak to the current issues in the

litigation.  The substantive provisions of the deeming rule are set forth in a series of regulations

that were adopted through notice and comment rulemaking.  81 Fed. Reg. at 29,102–06 (adding

21 C.F.R. parts 1100, 1140, 1143).  Any changes to those regulations would likewise have to be

made through the rulemaking process, not this litigation.  Thus, while the FDA could propose

changing the contours of the deeming rule through future rulemaking, the proposed intervenors

offer nothing to suggest that the agency's commitment to defending the rule as it stands has

shifted.  On the contrary, the FDA's recent announcement affirmed the deeming rule's central

place in the agency's tobacco regulation strategy, and the government intends to continue

defending it.

To the extent that the proposed intervenors may disagree with policy changes that could

result from additional rulemaking, the appropriate forum for raising such concerns would be any

future notice-and-comment period.  As noted, the FDA plans to issue ANPRMs seeking public

comment on several topics.  *See supra* at 3.  But even if the deeming rule were ultimately

modified through future rulemaking, intervention here would not enable the proposed intervenors

to defend any modified provisions.  Rather, they, like the FDA, would be limited to defending

provisions of the rule that remained in place, as Plaintiffs' claims related to any modified

provisions would be moot.  *See, e.g.*, *Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017) ("When

a plaintiff's complaint is focused on a particular statute, regulation, or rule and seeks only

prospective relief, the case becomes moot when the government repeals, revises, or replaces the challenged law and thereby removes the complained-of defect.") (citation omitted).

As the proposed intervenors acknowledge, "if Defendants adequately defend the Deeming Rule" it may not be "necessary" for them to file a brief in intervention at all.  Int. Br. 20–21.  Here, it is unclear what claims Plaintiffs may wish to press, if any, in the wake of the FDA's announcement.  But if further litigation proves necessary, and the prospective intervenors come to believe that Defendants' opening brief is somehow inadequate, they could renew their motion to intervene at that time.  Until then, however, it is at least premature to conclude that Defendants will not adequately represent the interests at stake.  *See, e.g.*, *Bldg. & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994) (prospective intervenor's "interest was adequately represented" where it "offered no argument not also pressed by [the Department of] Labor").[10]

## II.   PERMISSIVE INTERVENTION

The proposed intervenors alternatively seek permissive intervention under Rule 24(b).  That rule provides that, upon timely motion, the Court "may" permit intervention by movants who have a "claim or defense" that shares a "common question of law or fact" with the main action.  Fed. R. Civ. P. 24(b)(1).  "As its name would suggest, permissive intervention is an inherently discretionary enterprise."  *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

---

[10] *See also, e.g.*, *United States v. Microsoft Corp.*, Nos. 98-1232, 98-1233, 2002 WL 319784, at *2 (D.D.C. Jan. 28, 2002) ("Rule . . . 24 does not require the Court to permit intervention based upon speculation that intervention may be useful for protecting one's rights, if the need for such protection should arise at some point in the proceedings. . . . [I]nasmuch as Proposed Intervenors seek to intervene in anticipation of an actual need for intervention, the Court shall deny the motion as premature.").

"In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  It may also consider whether the movants will "'significantly contribute to the just and equitable adjudication of the legal question presented.'"  *Envtl. Integrity Project v. McCarthy*, 319 F.R.D. 8, 12 (D.D.C. 2016) (citation omitted).  Where "the interests of a party are already adequately represented and allowing intervention would be duplicative," however, "permissive intervention is properly denied."  *ACRA Turf, LLC v. Zanzuccki*, No. 12-2775, 2013 U.S. Dist. LEXIS 26534, at *7 (D.N.J. Feb. 26, 2013).[11]

Defendants take no position on the request for permissive intervention, and leave to the Court's considered discretion whether elevating the proposed intervenors, who are already amici, to party status would "'significantly contribute'" to its resolution of whatever claims Plaintiffs may wish to press in this case.  *Envtl. Integrity Project*, 319 F.R.D. at 12 (citation omitted).  In making this assessment, the Court may wish to consider whether the participation of the proposed intervenors as amici already appropriately accommodates their interests.

The "classic role of amic[i] curiae" is to "assist[] in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration."  *Miller-Wohl Co. v. Comm'r of Labor & Indus.*, 694 F.2d 203, 204 (9th Cir. 1982).  Here, even if intervention were denied, the proposed intervenors' "views will *already* be at issue in this case, because the Court has granted [them] leave to file an amicus brief."  Int. Br.

---

[11] *See also, e.g.*, *Blount-Hill v. Bd. of Educ. of Ohio*, 195 F. App'x 482, 487 (6th Cir. 2006) (considering whether the proposed intervenor's "contribution will add anything of unique value" or merely result "in the duplication of the efforts of the existing [parties]"); *Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982) (where "the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous").

21 (emphasis in original); *see Bldg. & Constr. Trades Dep't*, 40 F.3d at 1282 (denial of intervention proper where "brief as amicus curiae . . . offered no argument not also pressed by" the government).  Consistent with its general practice in other deeming cases, Defendants took no position on the proposed intervenors' request to participate as amici, deferring to the Court's judgment on that issue of judicial discretion.  Defendants do the same with respect to permissive intervention here.

### III.   IF INTERVENTION IS PERMITTED, IT SHOULD BE LIMITED TO THE SUBMISSION OF BRIEFS ON ANY REMAINING CLAIMS

If intervention is permitted, then—consistent with the rules governing intervention and the prospective intervenors' own assurances—it should be limited to the filing of summary judgment briefs on any claims that Plaintiffs still wish to press.  The prospective intervenors should not be permitted, for example, to raise additional claims, file other motions, or address collateral issues.  Indeed, they state that their participation "would not inject any new issues into the case."  Int. Br. 20; *see also id.* at 20–21 (noting that they "intend to address, if necessary, the same issues currently scheduled to be briefed," concerning "Plaintiffs' claims against the Deeming Rule").  The Court can and should hold them to that commitment.

"[I]t is well settled in this circuit that 'an intervening party may join issue only on a matter that has been brought before the court by another party.'"  *Seminole Nation v. Norton*, 206 F.R.D. 1, 7 (D.D.C. 2001) (quoting *Ill. Bell Tel. Co. v. FCC*, 911 F.2d 776, 786 (D.C. Cir. 1990)); *see also Vinson v. Wash. Gas Light Co.*, 321 U.S. 489, 498 (1944) ("[A]n intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding.").  Thus, "'[a]n intervention of right under [Rule 24] may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.'"

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 738 n.11 (D.C. Cir. 2003) (quoting Fed. R. Civ.

P. 24(a) advisory committee's note on 1966 amendment).  The conditions placed on a permissive

intervenor may be even more restrictive.  *Stringfellow v. Concerned Neighbors in Action*, 480

U.S. 370, 382 n.1 (1987) (Brennan, J., concurring in part and concurring in the judgment) ("Even

highly restrictive conditions may be appropriately placed on a permissive intervenor, because

such a party has by definition neither a statutory right to intervene nor any interest at stake that

the other parties will not adequately protect or that it could not adequately protect in another

proceeding.").

Here, if intervention is permitted, to promote efficiency it should be limited to the filing

of summary judgment briefs on any claims Plaintiffs may still wish to press.  The D.C. Circuit

has explicitly approved a similar limitation.  *See Fund for Animals*, 322 F.3d at 738 n.11 (district

court permissibly "limited their intervention to 'the claims raised by the original parties' and

barred them from raising 'collateral issues'").

## CONCLUSION

For the foregoing reasons, Defendants take no position on the motion to intervene.  If

intervention is permitted, however, Defendants respectfully request that its scope be limited to

the submission of summary judgment briefs on any claims Plaintiffs may still wish to pursue.

Dated: August 7, 2017

Of counsel:

JEFFREY S. DAVIS
Acting General Counsel
Food and Drug Division
Office of General Counsel
U.S. Dep't of Health and Human Services

REBECCA K. WOOD
Chief Counsel

Respectfully submitted,

BRETT A. SHUMATE
Deputy Assistant Attorney General

DIANE KELLEHER
Assistant Director

 /s/ Eric Beckenhauer
ERIC B. BECKENHAUER
Trial Attorney
U.S. Department of Justice

PERHAM GORJI
Deputy Chief Counsel for Litigation

WENDY S. VICENTE
Senior Counsel
Office of the Chief Counsel
Food and Drug Administration
10903 New Hampshire Avenue
White Oak 31, Room 4562
Silver Spring, MD 20993-0002

Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20530
Tel: (202) 514-3338
Fax: (202) 616-8470
E-mail: Eric.Beckenhauer@usdoj.gov

*Counsel for Defendants*