**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CIGAR ASSOCIATION OF AMERICA, *et al.*,

        *Plaintiffs*,

        v.

UNITED STATES FOOD AND DRUG
ADMINISTRATION, *et al.*,

        *Defendants*.

Civil Action No. 16-1460 (APM)

**REPLY IN SUPPORT OF PUBLIC HEALTH INTERVENORS'
MOTION TO INTERVENE AS DEFENDANTS**

## TABLE OF CONTENTS

Page

ARGUMENT ............................................................................................................... 2

I.     PUBLIC HEALTH INTERVENORS' MOTION IS TIMELY ............................................ 2

II.    PUBLIC HEALTH INTERVENORS HAVE STANDING, AND PLAINTIFFS' SUIT
       THREATENS INTERVENORS' LEGALLY PROTECTED INTERESTS ............................. 4

III.   REPRESENTATION BY DEFENDANTS MAY BE INADEQUATE ............................... 10

CONCLUSION ........................................................................................................... 12

As explained in their opening brief, Public Health Intervenors—six public health organizations dedicated to combating smoking and the diseases it causes—have moved to intervene so that they may defend the Deeming Rule enacted by the FDA.  Under a straightforward application of Federal Rule of Civil Procedure 24(a), Public Health Intervenors are entitled to intervene as a matter of right, as they have concrete legal interests in defending the Deeming Rule—a critical step in ensuring reasonable public health regulation of cigars and other tobacco products—that may not be adequately represented by the existing parties.

Plaintiffs oppose that motion, principally on the ground that Plaintiffs' challenge to the Deeming Rule is not "[w]hat is really concerning the Anti-Tobacco Groups."  Pls.' Opp. at 7. Intervenors' real plan, Plaintiffs speculate, is to use this lawsuit as a vehicle for challenging decisions or future rulemakings the FDA announced on July 28, after Public Health Intervenors moved to intervene.  That is wrong.  Public Health Intervenors seek to defend the Deeming Rule against Plaintiffs' legal challenges, which seek to invalidate the entire Rule, including provisions of the Rule that the FDA says it is now reexamining.  If the FDA issues new rules that weaken the Deeming Rule in a manner inconsistent with legal requirements, Intervenors will oppose such changes in separate proceedings—but in the meantime, the Deeming Rule requires a complete defense against Plaintiffs' attempt to vacate it and to eliminate its many benefits to public health.

Plaintiffs' other arguments for denying Public Health Intervenors' motion misstate the law governing intervention; incorrectly describe the contents and effects of the Deeming Rule; and misunderstand the relationship between the FDA's recent announcements and its defense of the Rule here.  Contrary to Plaintiffs' framing, the Deeming Rule is far from a mere "enabling rule"; it is a substantive rule that prohibits or requires a wide variety of conduct by manufacturers and distributors of newly deemed tobacco products.  Vacating the Deeming Rule in its entirety,

as Plaintiffs seek to do here, will eliminate all of these regulatory mandates, making cigars and other newly deemed products more accessible to children with less information and protection.

Moreover, the FDA has now made clear that it seeks flexibility to reconsider important aspects of the Deeming Rule, including its regulation of many cigars.  The decisions and future rulemakings the FDA described on July 28 confirm that the FDA's views of the Deeming Rule— including the costs and benefits of regulation in this area—differ substantially or at least diverge from those of Public Health Intervenors, putting an exclamation point on why Intervenors' interests may not be adequately represented in this litigation.  At an absolute minimum, the FDA Defendants will seek flexibility to revisit settled portions of the Rule, giving them a goal in this suit that is inconsistent with Intervenors' interests.  Finally, a decision on intervention now, rather than after a stay, will advance judicial efficiency by allowing Public Health Intervenors to participate in ongoing discussions among the parties regarding the Deeming Rule and this litigation, ensuring that Intervenors' interests are adequately represented and helping to avoid the need for future litigation over any decisions reached by the FDA during those discussions.

## ARGUMENT

### I.  PUBLIC HEALTH INTERVENORS' MOTION IS TIMELY

As Public Health Intervenors have already explained, they sought to intervene in this action when it became clear that the FDA may not be an adequate representative of their interests and before the summary judgment deadline.  In these circumstances, the motion is plainly timely. *See* Mot. 15-16.  Indeed, the FDA concedes that this case "is in its early stages."  FDA Resp. 3.

Plaintiffs nonetheless argue that the motion is untimely.  According to Plaintiffs, Public Health Intervenors needed to move "more than four months" ago, when Defendants first requested additional time for briefing.  Pls.' Opp. at 9.  Other than that, Plaintiffs claim, Public

Health Intervenors "fail to identify any event after which the Government's inability to represent these interests became apparent." *Id.* Public Health Intervenors identified exactly such an event, specifically pointing to the FDA's May "postponement of all industry compliance deadlines" as the development of the "great[est] significance." Mot. 16. This was the first time it became apparent that the FDA was not committed to prompt enforcement of the Deeming Rule, and that the FDA thus had a different view of the costs and benefits of regulation from Public Health Intervenors. A routine request to extend a briefing schedule is very different from an administrative action delaying implementation of public health regulations. More generally, the test for the timeliness of intervention is not mechanical, but rather fact-specific. Plaintiffs do not claim that the short gap between that announcement and Public Health Intervenors' motion was unreasonable—nor could they, as no court proceedings or deadlines took place during that time.

If Plaintiffs' position were accepted, parties considering intervention would need to move prophylactically whenever the government requested an extension of briefing deadlines. This is a recipe for premature and unnecessary motions that disrupt litigation and waste the time of both the courts and the government. It would also put potential intervenors in an untenable bind: They would need to move as soon as the government requested a briefing extension, but (according to Plaintiffs) would not yet be able to satisfy the adequacy prong of Rule 24(a). The law does not impose such Catch-22s. *Cf. Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 187 (D.C. Cir. 2013) (rejecting a statutory interpretation that would make it impossible to sue and thus "enshrine" an "impermissible Catch-22 … in the law").

Plaintiffs assert that they would be "severely prejudiced" by intervention, "as they face imminent, costly deadlines under the regulatory regime challenged in this case." Pls.' Opp. 9. That is a non-sequitur. Public Health Intervenors' motion has no bearing on any upcoming

regulatory deadlines.  The only imminent regulatory deadlines fall on September 30 and

November 8, but even on the existing litigation schedule, oral argument on summary judgment is

scheduled for December 8.[1]  *See* Order (Doc. 35).  The regulatory deadlines identified by

Plaintiffs will thus come and go without a judicial decision on their legality, whether or not

intervention is granted.  And as to litigation timing, it is the Plaintiffs and the FDA that have

sought additional delay; resolving Public Health Intervenors' motion now will permit Intervenors

to participate in briefing according to any future scheduling order issued by this Court without

undue delay.  Plaintiffs' manufactured assertion of prejudice is thus unfounded.

## II.   PUBLIC HEALTH INTERVENORS HAVE STANDING, AND PLAINTIFFS' SUIT THREATENS INTERVENORS' LEGALLY PROTECTED INTERESTS[2]

Public Health Intervenors' motion and accompanying affidavits make crystal clear the

concrete and legally protected interests Intervenors have in defending the Deeming Rule.

Plaintiffs' scattered contrary arguments are unpersuasive.

---

[1] Specifically, the following deadlines are approaching:

- September 30, 2017:  deadline to register "establishments engaged in the manufacture, preparation, compounding, or processing of a tobacco product."

- November 8, 2017:  submission of ingredient listing and tobacco health documents; prohibition on use of modified risk claims; prominent labeling.

*Extension of Certain Tobacco Product Compliance Deadlines Related to the Final Deeming Rule: Guidance for Industry* 9-11 (Aug. 2017) (revised guidance), https://www.fda.gov/downloads/TobaccoProducts/Labeling/RulesRegulationsGuidance/UCM557716.pdf.  After this, there are no deadlines until August 2018.

[2] The standing and "legally protected interest" inquiries are coextensive.  *See, e.g.*, *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1146 (D.C. Cir. 2009) ("[B]y demonstrating Article III standing, the intervenors adduce a sufficient interest."); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) ("Our conclusion that [proposed intervenor] has constitutional standing is alone sufficient to establish that [it] has 'an interest relating to the property or transaction which is the subject of the action.'" (quoting Fed. R. Civ. P. 24(a)(2))). Accordingly, Public Health Intervenors jointly respond to Plaintiffs' arguments regarding standing and interest.

*First*, Plaintiffs assert that the Deeming Rule only collects information and enables future FDA action, such that any injury to Public Health Intervenors would come only from subsequent regulatory action. Pls.' Opp. 4, 17-19. That is false. The Deeming Rule, either by regulation or by extending the provisions of the Tobacco Control Act to the newly deemed products, prohibits or requires numerous activities by the manufacturers and distributors of newly deemed tobacco products that directly affect the interests of Intervenors. For example, the Rule prohibits the marketing of any newly deemed tobacco product not marketed on August 8, 2016 (the effective date of the Rule) in the absence of a marketing order granted by the FDA, 21 U.S.C. § 387j; 81 Fed. Reg. 28,974, 29,011 (May 10, 2016);[3] it prohibits the sale of newly deemed products to minors, 21 C.F.R. § 1140.10; it prohibits a number of promotional practices, such as the distribution of free samples, *id.* § 1140.16; it requires enhanced warning labels, *id.* § 1143.5, and disclosures of ingredients and the levels of harmful components, 21 U.S.C. § 387d; and it prohibits modified-risk claims, specifically including a bar on the use of terms such a "mild" or "light" in the advertising of newly deemed products, *id.* § 387k. None of these regulatory mandates depends at all upon further regulatory action. Plaintiffs are thus incorrect in claiming that the Deeming Rule contains a "requirement of a further, discretionary agency action before alleged public health benefits occur." Pls.' Opp. 19.

Plaintiffs also make much of the fact that Public Health Intervenors' supporting declarations included a paragraph describing the Deeming Rule's "modified risk" provision. Pls.' Opp. 3-4, 17-18. According to Plaintiffs, they "have not challenged that provision of the Rule." *Id.* at 4. That response is baffling. To start, Plaintiffs seek to vacate the entire Rule, not

---

[3] Eventually all newly deemed products not commercially marketed on February 15, 2007 will require an FDA marketing order to remain on the market. However, the Deeming Rule provides extended compliance periods that allow such products to remain on the market pending FDA action on an application for such a marketing order—so long as the product was marketed by August 8, 2016, the Rule's effective date. *See* 81 Fed. Reg. at 29,011.

specific provisions of it.  *See* Compl. ¶ 5.  Beyond that, it is simply incorrect that the modified

risk provision has no application to cigars.  That provision prohibits labeling tobacco products as

"mild," 21 U.S.C. § 387k (b)(2)(A)(ii), and "mild" cigars are an entire category of cigars.[4]

Indeed, one cigar manufacturer already sued the FDA regarding the modified risk provision,

although that lawsuit was voluntarily dismissed.  *See* Notice of Voluntary Dismissal, *John

Middleton Co. v. FDA*, No. 16-cv-996 (D.D.C. July 15, 2016), ECF No. 8.

*Second*, Plaintiffs are wrong that amicus participation would adequately protect Public

Health Intervenors' interests.  Pls.' Opp. 2, 11.  As an initial matter, the possibility of amicus

participation is irrelevant to intervention as of right under Rule 24(a).  None of the Rule 24(a)

factors looks to whether amicus status is available or sufficient.  While that may be relevant to

permissive intervention, it is beside the point in assessing intervention as of right.

Moreover, intervention confers party status, which is necessary to fully protect Public

Health Intervenors' interests.  For example, party status preserves Intervenors' right to appeal

any adverse decision, even if the FDA decides not to appeal.  Amicus participation does not, and

amici are often strictly limited to arguments and theories advanced by the parties themselves.

*See, e.g.*, *Nuesse v. Camp*, 385 F.2d 694, 704 n10 (D.C. Cir. 1967) (noting that amicus status "is

not an adequate substitute for participation as a party"); *United States v. City of Los Angeles,

Cal.*, 288 F.3d 391, 400 (9th Cir. 2002) (reversing denial of intervention as of right and stating

that "amicus status is insufficient to protect [intervenor's] rights because such status does not

---

[4] *See, e.g.*, John Pullo, *2016 CA Report:  The Top 12 Best Selling Mild Cigars*, Cigar
Advisor (Mar. 1, 2016), https://www.famous-smoke.com/cigaradvisor/12-best-selling-mild-
cigars.  Many of Plaintiffs' members market "mild cigars."  *See, e.g.*, Famous Smoke Shop, Mild
Cigars, https://www.famous-smoke.com/cigars/mild-cigars ("We stock thousands of mild
cigars.") (last visited Aug. 14, 2017); Holt's Cigar Co., Mild Cigars, http://www.holts.com/
cigars/mild-cigars.html (last visited Aug. 14, 2017); *see generally* Cigar Ass'n of Am., Inc., Our
Members, http://cigarassociation.org/about/our-members (last visited Aug. 14, 2017) (listing
Plaintiff Cigar Association of America's members).

allow [intervenor] to raise issues or arguments formally and gives it no right of appeal"). Intervenors, as parties, are not so restricted.  And amici, of course, cannot independently cross-move for summary judgment affirming the Deeming Rule—which is the likely procedural path for resolution of this case, as the *Nicopure* litigation demonstrates.  *See* Defs.' Cross-MSJ, *Nicopure Labs, LLC v. FDA*, No. 1:16-cv-00878-ABJ (D.D.C. July 21, 2017), ECF No. 43. Intervenors have that right, which is critical in light of the possibility the FDA may not defend all aspects of the Rule.

By creating party status, intervention would also ensure that Public Health Intervenors are able to participate in ongoing or future discussions concerning this litigation and the Deeming Rule.  The ability to participate in such discussions is important for Intervenors to ensure that their interests in the Deeming Rule are protected.   For all of those reasons, amicus status would be a wholly inadequate substitute for intervention.

*Third*, Plaintiffs argue that they are "masters of their complaint," that "they may dismiss this case ... for any reason or for no reason at all," and that intervenors generally "have no right to enlarge th[e] claims and prolong the case."  Pls.' Opp. at 12.  That may all be true, but it is all irrelevant.  Public Health Intervenors have not asked to enlarge the case, and they have no intention of using Plaintiffs' case as a vehicle for challenging future FDA action or the FDA's delayed compliance deadlines.  If Plaintiffs wish to dismiss their case, that is their prerogative. Intervenors are concerned not with the voluntary dismissal of claims by the Plaintiffs, but with the way that the interpretation and enforcement of the Deeming Rule could be used as bargaining chips in exchange for such dismissal.  To ensure that Public Health Intervenors' interests are

fully protected and to reduce the prospect of future litigation, it is important that Intervenors participate in discussions that resolve this litigation.[5]

For similar reasons, granting intervention now rather than deferring resolution of the motion—as Defendants suggest—would promote judicial economy.  For example, if Public Health Intervenors are granted party status, they can participate in discussions about concessions Defendants might make in exchange for Plaintiffs dropping their suit.  If Public Health Intervenors are part of those negotiations, they can let Defendants know which concessions they would likely challenge in the future and help develop a resolution that prevents additional litigation.  Moreover, they can bring to bear public health issues affected by proposed changes that might not otherwise be considered.  As amici, by contrast, they would have no exposure to those discussions and could only challenge such changes after the fact.  That would mean more lawsuits, and possibly motions for stays or preliminary injunctions.  From the perspective of judicial economy, intervention now is thus vastly preferable to the alternatives.[6]

In addition, if Plaintiffs and the FDA do not settle this matter and the litigation continues, it would be efficient and orderly to have resolved Intervenors' motion by then so that Intervenors can be factored in to future briefing or scheduling orders.

---

[5] The *John Middleton* case noted above provides an example of such discussions.  The public record does not show why the plaintiff dismissed its case or detail any commitments made by Defendants in negotiations with the plaintiff—but the plaintiff's parent company, Altria, told investors that it withdrew the lawsuit because the FDA informed Altria that it did not intend to enforce the Tobacco Control Act against the particular product at issue in the suit.  *See* William Cooper, *Cigar News: Altria Drops Lawsuit Against FDA*, Cigar Coop (July 29, 2016), https://cigar-coop.com/2016/07/cigar-news-altria-drops-lawsuit-against-fda.html.

[6] Defendants also suggest that the Court should impose limits on intervention.  Public Health Intervenors readily agree not to seek summary judgment on claims that Plaintiffs withdraw, much less to file cross-claims or counterclaims.  However, any further limitations are more likely to complicate proceedings and lead to disputes before the Court about the exact contours of intervention than they are to streamline the litigation of this case.

*Finally*, Plaintiffs point to one of this Court's decisions in *Alfa International Seafood v. Ross*, in which the Court denied intervention to groups of environmental activists but granted it to a trade association.  *See Alfa Int'l Seafood v. Ross* ("*Alfa I*"), No. 17-cv-31, 2017 WL 1377914 (D.D.C. Apr. 17, 2017); *Alfa Int'l Seafood v. Ross* ("*Alfa II*"), No. 17-cv-31, 2017 WL 1906586 (D.D.C. May 8, 2017).  Plaintiffs' reliance on the *Alfa* litigation is badly misplaced.

In *Alfa I*, the Court held that environmental intervenors lacked standing to defend a rule requiring the labeling of fish to show that the fish were not illegally caught.  2017 WL 1377914, at *1-2.  The environmental groups' showing fell short in three ways:  (1) the chain of events from the labeling requirement to a decrease in fishing (fishing that was already illegal) to intervenors' personal exposure to injury such as "reductions in at-risk fish populations" was "too abstract to satisfy the 'concrete' injury requirement," *id.* at *1; (2) the alleged injuries were "no different than that which the public at large would suffer" and thus not "particularized," *id.* at *2; and (3) the environmental groups did not "establish[] a 'realistic danger'" that the government policy would lead to third-party conduct that would affect the intervenors themselves, *id.*

None of those defects exists here.  The Deeming Rule does not concern a downstream rule intended to prevent already illegal conduct; it concerns substantive restrictions and requirements on tobacco manufacturers that directly control the availability of tobacco products marketed to children as well as the ability of manufacturers to make certain claims about those products.  Moreover, Public Health Intervenors are not intervening as members of the public but as health professionals who expend significant resources to combat the exact type of products and claims regulated by the Deeming Rule.  And the harm to Intervenors' interests from vacatur of the Rule is a certainty, well beyond the threshold of a "realistic danger."  For example, the Deeming Rule would assist doctors in explaining to their patients the contents and potential

harms of the specific tobacco products they smoke; the Rule would obviate the need to explain why specific products are unhealthy despite modified risk claims; and it would prohibit manufacturers from engaging in promotional practices, such as distribution of free samples, that have increased youth usage of tobacco products.  As public health organizations, Intervenors have a direct and concrete interest in all of those specific aspects of the Rule.

Indeed, in key respects, Public Health Intervenors are similarly situated to the trade association to which this Court granted intervention in *Alfa II*.  Unlike the environmental groups, the Court held that members of the trade association had a concrete interest in the rule because they were "forced to compete" against illegally caught fish and the rule they sought to defend would reduce the number of such products on the market.  2017 WL 1906586, at *1.  So too here:  Public Health Intervenors' sustained efforts to prevent children from taking up smoking are in direct conflict with Plaintiffs' efforts to market kid-friendly cigars, and thus vacatur of the Rule would directly undermine the interests of Public Health Intervenors.  For example, every child who takes up smoking is a child whom AAP's pediatrician members must spend additional time counseling and treating—which means, among other things, a doctor can see fewer patients (to say nothing of the impact on the health of the child).

## III.   REPRESENTATION BY DEFENDANTS MAY BE INADEQUATE

Finally, relying again on *Alfa I*, Plaintiffs claim that Public Health Intervenors "have not demonstrated that the United States Department of Justice will not adequately defend the Rule."  Pls.' Opp. 13.  Plaintiffs' arguments are doubly flawed.

As a preliminary matter, Plaintiffs misstate the legal standard.  As both the Supreme Court and the D.C. Circuit have made clear, the question is whether representation by existing parties *may* be inadequate, not whether it certainly *will* be.  *See, e.g.*, *Trbovich v. United Mine*

*Workers*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest '*may be*' inadequate; and the burden of making that showing should be treated as minimal." (emphasis added)); *accord Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003); *Alfa I*, 2017 WL 1377914, at *3.  Here, Public Health Intervenors have already explained why their interests may not be adequately represented by the government, as evidenced by the plainly different views of the costs and benefits of the Rule held by Public Health Intervenors and the FDA.

In addition, apart from Plaintiffs' misstatement of the legal standard, Plaintiffs' analogy to *Alfa I* falls flat.  There, the *only* specific grounds the intervenors identified for believing their interests would diverge were the existence of a new administration and different opinions about the challenged rule's implementation (when only the rule's legality was at issue in the suit).  *Alfa I*, 2017 WL 1377914, at *3.  Here, by contrast, Defendants have *already* announced their intent to reconsider provisions of the Deeming Rule and to abandon core components of the Rule that are challenged in this lawsuit.

As just one example, FDA Administrator Scott Gottlieb announced that the FDA likely would allow manufacturers to "continue to market products while the agency reviews product applications."  Pls.' Opp. Ex. A at 2.  This appears to concede Plaintiffs' challenge to the existing Deeming Rule in Part III of their summary judgment motion.  *See* Doc. 22, at 29 (challenging the Deeming Rule's "declin[ing] to permit products to remain on the market while the FDA considers applications").  Similarly, the FDA announced that it would "solicit additional comments and scientific data related to the patterns of use and resulting public health impacts from premium cigars," Pls.' Opp. Ex. A at 3, thereby suggesting that it no longer stands by the extensive analysis of premium cigars in the Deeming Rule—and that it might not oppose Part V

of Plaintiffs' summary judgment motion, which challenges the current regulation of premium cigars. *See* Doc. 22, at 31-34.[7]  At an absolute minimum, Defendants have an interest in preserving the flexibility to revisit determinations that the FDA made in enacting the Deeming Rule.  That may well lead them to argue that some parts of the Deeming Rule were *permitted* by the Tobacco Control Act where Intervenors would argue that those parts were *mandatory*.

Given the FDA's announcements, Public Health Intervenors do not rely on sheer speculation "that the new administration will usher in policy changes that weaken the Rule." *Alfa I*, 2017 WL 1377914, at *3.  Here, the government has made official statements that make two things clear:  (1) the government may not defend all aspects of the Deeming Rule in this case; and (2) even if it does, the government may not be an adequate representative of Public Health Intervenors' interests because Intervenors and the FDA now have different perspectives on the costs and benefits of public health regulation of cigars and related tobacco products.  In these circumstances, Rule 24(a)'s standards are plainly satisfied.

## CONCLUSION

For these reasons and the reasons stated in Public Health Intervenors' motion, the Court should grant the motion to intervene.

---

[7] To avoid any doubt, Public Health Intervenors repeat that they will not bring claims against any such future FDA actions in this case.  If the FDA does issue such rules and Intervenors determine that they do not comply with the law, that would be the subject of a different lawsuit.  But the FDA's interest in undertaking regulatory steps inconsistent with the Deeming Rule highlights the risk that those intentions will lead them to be inadequate representatives of Intervenors' interests in defending the Deeming Rule.

Dated:  August 14, 2017

Respectfully submitted,

/s/  Kelly P. Dunbar
Kelly P. Dunbar (D.C. Bar No. 500038)
Kevin M. Lamb (D.C. Bar No. 1030783)
WILMER CUTLER PICKERING HALE
  AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC  20006
kelly.dunbar@wilmerhale.com
kevin.lamb@wilmerhale.com
(202) 663-6000

Javier M. Guzman (D.C. Bar No. 462679)
Jeffrey B. Dubner (D.C. Bar No. 1013399)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
jguzman@democracyforward.org
jdubner@democracyforward.org
(202) 448-9090

Dennis Henigan (D.C. Bar No. 951897)
Mark E. Greenwold (D.C. Bar No. 178186)
CAMPAIGN FOR TOBACCO-FREE KIDS
1400 I Street, NW
Washington, DC  20005
dhenigan@tobaccofreekids.org
mgreenwold@tobaccofreekids.org
(202) 296-5469

*Counsel for proposed Intervenor-Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of August, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF system, which will send a notice of filing to all counsel of record.

/s/  Kelly P. Dunbar
KELLY P. DUNBAR