# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CIGAR ASSOCIATION OF AMERICA, INTERNATIONAL PREMIUM CIGAR AND PIPE RETAILERS ASSOCIATION, AND CIGAR RIGHTS OF AMERICA, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 16-1460 (APM) |
| UNITED STATES FOOD AND DRUG ADMINISTRATION, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' MOTION FOR A STAY OR INJUNCTION PENDING APPEAL OR, IN THE ALTERNATIVE, PENDING RESOLUTION OF COUNT V OF PLAINTIFFS' COMPLAINT

For the reasons stated in the accompanying memorandum of law, Plaintiffs respectfully move for an injunction against the enforcement of the FDA's cigar and pipe tobacco warnings requirements set forth at 21 C.F.R. §§ 1143.3 and 1143.5 pursuant to Federal Rule of Civil Procedure 62(c) or a postponement of the August 10, 2018 effective date of those requirements pursuant to 5 U.S.C. § 705, pending appeal of the Court's denial of Plaintiffs' motion for a preliminary injunction against their enforcement and for 60 days after the resolution of that appeal. In the alternative, Plaintiffs move for a postponement of the effective date of the FDA's cigar warnings requirements set forth at 21 C.F.R. § 1143.5 until 60 days after this Court's resolution of Count V of Plaintiffs' complaint.

Counsel for Plaintiffs conferred with counsel for Defendants about this motion on June 8, 2018, and Defendants oppose this motion.

Dated: June 8, 2018

Respectfully submitted,

/s/ *Michael J. Edney*
Michael J. Edney, DC Bar No. 492024
Ryan E. Meltzer, Texas Bar No. 24092821
NORTON ROSE FULBRIGHT US LLP
799 9th Street, NW, Suite 1000
Washington, DC 20001-4501
Telephone:  (202) 662-0200
Fax:  (202) 662-4643
michael.edney@nortonrosefulbright.com
ryan.meltzer@nortonrosefulbright.com

*Attorneys for Plaintiffs International Premium Cigar and Pipe Retailers Association and Cigar Rights of America*

/s/ *Mark S. Raffman*
Mark S. Raffman, DC Bar No. 414578
Andrew Kim, DC Bar No. 1029348
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC 20001
Telephone:  (202) 346-4000
Fax:  (202) 346-4444
mraffman@goodwinlaw.com
andrewkim@goodwinlaw.com

*Attorneys for Plaintiff Cigar Association of America*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CIGAR ASSOCIATION OF AMERICA, INTERNATIONAL PREMIUM CIGAR AND PIPE RETAILERS ASSOCIATION, AND CIGAR RIGHTS OF AMERICA, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 16-1460 (APM) ) |
| UNITED STATES FOOD AND DRUG ADMINISTRATION, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A STAY OR INJUNCTION PENDING APPEAL OR, IN THE ALTERNATIVE, PENDING RESOLUTION OF COUNT V OF PLAINTIFFS' COMPLAINT

Dated: June 8, 2018

Michael J. Edney, DC Bar No. 492024
Ryan E. Meltzer, Texas Bar No. 24092821
NORTON ROSE FULBRIGHT US LLP
799 9th Street, NW, Suite 1000
Washington, DC 20001-4501
Telephone:  (202) 662-0200
Fax:  (202) 662-4643
michael.edney@nortonrosefulbright.com
ryan.meltzer@nortonrosefulbright.com

*Attorneys for Plaintiffs International Premium Cigar and Pipe Retailers Association and Cigar Rights of America*

Mark S. Raffman, DC Bar No. 414578
Andrew Kim, DC Bar No. 1029348
GOODWIN PROCTER LLP
901 New York Avenue NW
Washington, DC 20001
Telephone:  (202) 346-4000
Fax:  (202) 346-4444
mraffman@goodwinlaw.com
andrewkim@goodwinlaw.com

*Attorneys for Plaintiff Cigar Association of America*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

I.      THE FDA'S ARBITRARY ENFORCEMENT OF THE DEEMING RULE................. 2

II.     THE COURSE OF THIS LITIGATION ......................................................... 5

ARGUMENT ..................................................................................................... 8

I.      THE COURT SHOULD ENJOIN ENFORCEMENT OF THE WARNINGS
        REQUIREMENTS PENDING APPEAL OF ITS ORDER DENYING A
        PRELIMINARY INJUNCTION PURSUANT TO FEDERAL RULE OF CIVIL
        PROCEDURE 62(C) ............................................................................ 8

        A.      When the Equities Favor a Party Challenging Agency Action, the Court
                May Grant an Injunction Pending Appeal if There Is a Substantial Issue
                for the Appellate Court's Resolution .................................................. 9

        B.      Plaintiffs Are Likely to Succeed or, at a Minimum, Present Serious Legal
                Questions on the Merits ................................................................. 10

        C.      Plaintiffs Face Mounting Irreparable Harm ........................................ 15

        D.      The Balance of the Equities Favors Granting this Motion .................... 17

        E.      Granting this Motion Would Serve the Public Interest........................ 17

II.     THE COURT SHOULD POSTPONE THE EFFECTIVE DATE OF THE
        WARNINGS AND PRESERVE THE STATUS QUO PURSUANT TO
        SECTION 705 OF THE APA.............................................................. 19

CONCLUSION................................................................................................. 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.,*
  289 F. Supp. 3d 73 (D.D.C. 2018) (Mehta, J.)................................................9, 10, 17

*Airmark Corp. v. FAA,*
  758 F.2d 685 (D.C. Cir. 1985) ..................................................................................23

*Akiachak Native Cmty. v. Jewell,*
  995 F. Supp. 2d 7 (D.D.C. 2014) .....................................................................9, 10, 15

*Am. Beverage Ass'n v. City & Cty. of S.F.,*
  880 F.3d 1019 (9th Cir. 2018) (*en banc*) ................................................................13

*American Meat Institute v. USDA,*
  760 F.3d 18 (D.C. Cir. 2014) (*en banc*)................................................10, 11, 12, 13

*Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.,*
  403 F.3d 771 (D.C. Cir. 2005) ..................................................................................22

*Chamber of Commerce of U.S.A. v. U.S. Dep't of Labor,*
  885 F.3d 360 (5th Cir. 2018) ....................................................................................23

*Chamber of Commerce v. Reich,*
  897 F. Supp. 570 (D.D.C. 1995)......................................................................9, 10, 15

*Citizens for Responsibility & Ethics in Wash. v. Office of Admin.,*
  593 F. Supp. 2d 156 (D.D.C. 2009) ..........................................................................15

*Clarke v. Office of Fed. Hous. Enter. Oversight,*
  355 F. Supp. 2d 56 (D.D.C. 2004) ............................................................................17

*Dist. Hosp. Partners, L.P. v. Burwell,*
  786 F.3d 46 (D.C. Cir. 2015) ....................................................................................22

*Edenfield v. Fane,*
  507 U.S. 761 (1993).................................................................................................12

*FBME Bank Ltd. v. Lew,*
  209 F. Supp. 3d 299, 310 (D.D.C. 2016) ..................................................................20

*Gen. Chem. Corp. v. United States,*
  817 F.2d 844 (D.C. Cir. 1987) ..................................................................................23

*Gordon v. Holder,*
  721 F.3d 638 (D.C. Cir. 2013) .............................................................................16, 18

*Pursuing Am.'s Greatness v. FEC,*
  831 F.3d 500 (D.C. Cir. 2016) .............................................................................14, 18

*Green Country Mobilephone, Inc. v. FCC,*
  765 F.2d 235 (D.C. Cir. 1985) ........................................................................................23

*In re GTE Serv. Corp.,*
  762 F.2d 1024 (D.C. Cir. 1985) ......................................................................................20

*Hamilton Watch Co. v. Benrus Watch Co.,*
  206 F.2d 738 (2d Cir. 1953) ..............................................................................................9

*Mississippi ex rel. Hood v. AU Optronics Corp.,*
  571 U.S. 161 (2014) ........................................................................................................20

*Loving v. IRS,*
  920 F. Supp. 2d 108 (D.D.C. 2013) ................................................................................10

*Mann v. Wash. Metro. Area Transit Auth.,*
  185 F. Supp. 3d 189 (D.D.C. 2016) (Mehta, J.) ..............................................................16

*\*McConnell v. FEC,*
  253 F. Supp. 2d 18 (D.D.C. 2003) ......................................................................15, 17, 21

*N. Mariana Islands v. United States,*
  686 F. Supp. 2d 7 (D.D.C. 2009) ....................................................................................17

*National Association of Manufacturers v. SEC,*
  800 F.3d 518 (D.C. Cir. 2015) ...................................................................................12, 14

*Petroleum Commc'ns, Inc. v. FCC,*
  22 F.3d 1164 (D.C. Cir. 1994) ........................................................................................22

*\*Portland Cement Ass'n v. EPA,*
  665 F.3d 177 (D.C. Cir. 2011) ...................................................................................21, 23

*Pub. Citizen, Inc. v. La. Attorney Disciplinary Bd.,*
  632 F.3d 212 (5th Cir. 2011) ..........................................................................................12

*R.J. Reynolds Tobacco Co. v. FDA,*
  696 F.3d 1205 (D.C. Cir. 2012) .............................................................10, 11, 13, 16, 19

*R.J. Reynolds Tobacco Co. v. FDA,*
  823 F. Supp. 2d 36 (D.D.C. 2011) ..................................................................................16

*Shays v. FEC,*
  340 F. Supp. 2d 39 (D.D.C. 2004) ....................................................................................9

*Sierra Club v. Jackson,*
  648 F.3d 848 (D.C. Cir. 2011) ........................................................................................11

*Sierra Club v. Jackson,*
  833 F. Supp. 2d 11 (D.D.C. 2012) ..................................................................................20

*Smoking Everywhere, Inc. v. FDA,*
  680 F. Supp. 2d 62 (D.D.C. 2010) ..................................................................................16

*Stewart v. D.C. Armory Bd.*,
　789 F. Supp. 402 (D.D.C. 1992) ......................................................................................18

*Texas v. EPA*,
　829 F.3d 405 (5th Cir. 2016) ..........................................................................................16

*U.S. v. W. Elec. Co., Inc.*,
　774 F. Supp. 11 (D.D.C. 1991) ........................................................................................15

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
　559 F.2d 841 (D.C. Cir. 1977) ..........................................................................................9

*Winter v. NRDC*,
　555 U.S. 7 (2008) ..............................................................................................................9

**Rules and Statutes**

5 U.S.C. § 705 ..................................................................................2, 5, 17, 19, 20, 23, 24

Fed. R. Civ. P. 62(c) ......................................................................................................8, 9

**Regulations**

Regulation of Premium Cigars,
　83 Fed. Reg. 12,901 (Mar. 26, 2018) ...........................................................................3, 24

21 C.F.R. § 1143.13 ...........................................................................................................19

## **INTRODUCTION**

Plaintiffs respectfully request that the Court postpone the effective date and otherwise enjoin enforcement of the cigar and pipe tobacco warnings requirements pending Plaintiffs' forthcoming appeal of this Court's denial of Plaintiffs' motion for a preliminary injunction or, in the alternative, this Court's resolution of Count V of the Complaint challenging the agency's decision on what cigars should be regulated.[1]

Absent this Court's intervention, on August 10, 2018, the Government's stark and glaring warnings will cover thirty percent of the two main panels of every cigar box in the country. Twenty percent of every sign, letter, flyer, and e-mail about sale of cigars will be draped with the Government's message. The FDA rule challenged in this case mandates the largest fully conceived commercial warning ever upheld against First Amendment challenge by a federal court in the history of the Republic.

Plaintiffs respectfully disagree with the Court's decision upholding the warnings requirements. The Court, however, need not agree with Plaintiffs' substantive position to acknowledge that the issues it resolved were not simple, but rather represent "substantial questions" on which the D.C. Circuit could disagree. If "substantial questions" are presented, the Court may grant an injunction pending appeal where the equities strongly tilt in favor of preserving the status quo, the injunction is in the public interest, and irreparable harm would otherwise ensue.

As the Court's opinion demonstrates, these factors are manifest here. The irreparable harm to cigar companies and retailers was clear to the Court, which observed that they will spend

---

[1] As set forth in the Proposed Order submitted herewith, for all forms of requested relief, Plaintiffs respectfully ask that the Court install a buffer period of 60 days following the resolution of either the appeal or of Count V so that Plaintiffs' members may cease further efforts to comply with the rule and only resume those efforts if judicial relief is denied. This course of action will best avoid the further incursion of unrecoverable compliance costs and irreparable harm.

millions of unrecoverable dollars redesigning their packages and messages.  Opinion ("Op.") at 46–47, ECF No. 94.  As for the equities, the agency has reopened the scope and content of the regulation of cigars through a new rulemaking docket.  The Court held that the agency's enforcement of the warnings requirement, while undertaking measures to eliminate or modify it, is a "grossly unfair exercise of agency authority" and "smacks of basic unfairness."  *Id.*

In addition to the rules governing injunctions pending appeal in general, Section 705 of the Administrative Procedure Act ("APA") gives this Court special authority to postpone the effective date of a rule pending judicial proceedings.  This provision provides ample authority to stave off the unfairness of enforcing some parts of the rule, but not others, pending the FDA's rethinking of cigar regulation.  Both the appeal, and Plaintiffs' pending claim challenging the agency's decision on the types of cigars that should be regulated, are "pending" proceedings that activate the Court's authority to postpone the effective date of the warnings requirements.

## **BACKGROUND**[2]

## I.  **THE FDA'S ARBITRARY ENFORCEMENT OF THE DEEMING RULE**

Thirteen months after it issued a final rule directing that all types of cigars and pipe tobacco be regulated just like cigarettes (the "Deeming Rule" or the "Rule"), the FDA announced a massive reevaluation of the Rule.  *See* Press Release, FDA, FDA Announces Comprehensive Regulatory Plan to Shift Trajectory of Tobacco-Related Disease, Death (July 28, 2017) at 1, ECF No. 62-4.  To that end, the FDA promised to issue several advance notices of proposed rulemaking ("ANPRMs"), including one regarding "the patterns of use and resulting public health impacts from premium cigars."  *Id.*  That rulemaking proceeding was expressly

---

[2] Plaintiffs respectfully refer the Court to the Memorandum of Law in Support of Plaintiffs' Motions for Partial Summary Judgment and for a Preliminary Injunction, which is incorporated by reference herein, for a more comprehensive statement of the factual and procedural history of this matter.  ECF No. 62, at 3–14.

designed to reconsider the exemption of a category of premium cigars from regulation, thereby affecting the scope of the Rule's coverage as to cigars. *See* ECF No. 87-1 (FDA Pre-Rule: "FDA is aware that there is still interest in exempting these products from regulation or regulating them in a different manner from other cigars and, therefore, intends to issue an advance notice of proposed rulemaking requesting scientific information that might support such an action.").

To accommodate these new rulemaking proceedings, the agency extended the effective dates of some aspects of the Rule—including the substantial equivalence and premarket review mandates—by more than three years. The agency memorialized these delays in the effective dates through the issuance of enforcement guidance.[3] The agency revised that guidance twice more to provide extensions of the manufacturer registration, ingredient listing, and tobacco health document requirements. Partial Extension Guidance at 12. But the agency has not extended the effective date of the warnings requirements for cigars, which is currently set for August 10, 2018. Neither in the announcement, nor in its three subsequent guidance releases extending deadlines, did the agency explain why it was extending some deadlines, but allowing others to go into effect, while it was reconsidering the scope and content of cigar regulation. *Id.* at 3–4.

The FDA released the ANPRM on the regulation of premium cigars on March 26, 2018. *See* Regulation of Premium Cigars, 83 Fed. Reg. 12,901, 12,901–04 (Mar. 26, 2018) (the "Premium Cigars ANPRM"). The agency explained that it has decided to "consider the appropriate regulatory status of premium cigars" in light of "ongoing and emerging research"

---

[3] This was not the agency's first extension of compliance deadlines. In May 2017, following the change in presidential administrations, the FDA delayed all future compliance deadlines under the Rule by three months in order to enable the new leadership at HHS "to more fully consider the Rule and the issues raised" in litigation challenging the Rule. ECF No. 34, ¶¶ 3–4; Ctr. for Tobacco Prods., Food & Drug Admin., *Extension of Certain Tobacco Product Compliance Deadlines Related to the Final Deeming Rule: Guidance for Industry (Revised)* 2 (Nov. 2017) (the "Partial Extension Guidance").

and "ongoing interest from many parties and sectors, such as industry and Members of Congress." *Id.* at 12,902.   That ANPRM provided no reason to distinguish the warnings requirements from other provisions of the Rule that the agency had delayed.

To the contrary, the agency targeted the warnings requirements for revision.   The FDA seeks data on: (1) "advertising, labeling, and/or packaging requirements and restrictions in the FD&C Act and its implementing regulations, and whether they should be applied differently to premium cigars compared to other tobacco products"; (2) "the impact of premium cigar labeling, advertising, and marketing efforts on patterns of use"; (3) "consumer perceptions of the health risks of premium cigars when compared to other tobacco products, including other cigars"; and (4) "consumer perceptions of the addictiveness of premium cigars, especially compared and contrasted with perceptions for other cigars." *Id.* at 12,903–04.   And the agency opened an inquiry into the content of the warnings, seeking "[s]tudies or information on the required warning statements" and suggested revisions to them. *Id.* at 12,904.

Despite reopening these issues, the agency rejected without explanation Plaintiffs' repeated requests that it stay the effective date of the new warnings requirements, even with the consequence of compressing this Court's schedule for considering the grant of meaningful relief in this case. *See* ECF No. 53, ¶¶ 5–7 (detailing the parties' attempts to negotiate a briefing schedule in light of the FDA's refusal to extend all compliance deadlines under the Deeming Rule); ECF No. 62, at 14 ("The FDA left in place certain aspects of the Rule that inflict disproportionate burdens on cigars and pipe tobacco and transgress clear legal limitations, to no good end.   Chief among them is the health warning requirement, which the agency has yet to justify . . . ."); ECF No. 92, at 1 ("Plaintiffs appreciated the Government's notice, but were surprised that it was not accompanied by a voluntary stay of enforcement of the mandated warnings . . . .   The warnings

requirement cannot be allowed to go into effect on August 10, 2018, while the agency reconsiders . . . ."). The FDA's refusal to extend the effective date of the warnings requirement created an untenable situation for the Court. While the Court had suggested it would rule by the end of January, the complexity of this matter delayed a ruling until May 15, 2018, which renders meaningful appellate review of the warnings requirements before they take effect virtually impossible absent an injunction pending appeal. And Plaintiffs' members have been and are now being forced to expend millions of dollars to bring themselves into compliance with regulatory directives that the agency very well may change.

## II.    THE COURSE OF THIS LITIGATION

On July 15, 2016, Plaintiffs filed the Complaint in this action, advancing nine claims under the APA and the U.S. Constitution. ECF No. 1. In addition to seeking an order setting aside the Rule and enjoining its enforcement, Plaintiffs specifically requested relief pursuant to 5 U.S.C. § 705, which authorizes the Court to stay the effective date of a regulation to preserve the status quo pending the resolution of a judicial challenge. *Id.* ¶ 8. On February 13, 2017, Plaintiffs filed a motion for summary judgment on all claims. ECF No. 22. Following the change in Administration, the FDA sought a total of six months of extensions of its time to file a response and extended effective dates in the Rule to accommodate its consideration of next steps. ECF Nos. 26, 27, 34.

After the July 28, 2017, press release announcing new rulemaking proceedings, *the Government*, not Plaintiffs, asked this Court to stay consideration of several of Plaintiffs' claims. Count V of the Complaint, challenging the agency's decision regarding what types of cigars should be regulated as arbitrary and capricious, is but one example. The Government contended that "resolution of aspects of Plaintiffs' claims related to the premarket review process, the FDA's decision to deem premium cigars subject to regulation, and the agency's cost-benefit

analysis underlying the Deeming Rule"—Counts I, IV, and V of the Complaint—"should await the further regulatory action that the FDA has announced it intends to pursue, because those announced regulatory actions may materially change the regulatory scheme underlying these claims."  ECF No.  53, ¶ 4; *see also* ECF No. 51, ¶ 4.  Indeed, Defendants urged going beyond simply staying Count V and the other affected claims, suggesting that they be dismissed without prejudice because of the very distinct possibility that the FDA's future action pursuant to its new rulemaking proceeding effectively would grant the relief sought therein.  *See* ECF No.  53, ¶ 4.

On October 3, 2017, Plaintiffs filed their motions for partial summary judgment and for a preliminary injunction.  ECF Nos. 61, 62.  Those motions explained that the agency's continued enforcement of the warnings requirements, in light of its announced reconsideration of the scope and content of cigar regulation and its stay of other deadlines for sufficient time for that reconsideration to be completed, made no sense and was arbitrary.  *See* ECF No. 62, at 1, 13–14; ECF No. 78, at 33.  On December 14, 2017, after the motions had been fully briefed, the Court heard oral argument.  ECF No. 85.

At oral argument, the Government provided no explanation for its arbitrary enforcement of certain parts of the Deeming Rule, but not others, despite repeated questioning from the Court. *See, e.g.*, Hr'g Tr. 23:6–16, 38:17–39:22.  And the Government declined to answer whether the scope and content of the warnings requirements would be changed through the announced rulemakings.  *See, e.g.*, Hr'g Tr. 36:8–39:17, 70:24–71:2.  In briefing and at oral argument, Plaintiffs asked the Court to enjoin the warnings requirements until the agency resolved its pending rulemakings.  *See* ECF No. 78, at 33 ("The Court should preserve the status quo while the agency weighs the appropriate regulation of premium cigars.");  Hr'g Tr. 64:11–17 (asking the Court, "at a

minimum, [to] enjoin" the warnings requirements until the new rulemaking docket "is completely sorted out").

On May 15, 2018, the Court issued its opinion and order on Plaintiffs' motions. ECF No. 94.  After grappling with intersecting precedents from the D.C. Circuit, the Court upheld the Rule's health warning requirements and denied the motion for preliminary injunction.  Op. at 2.  The Court, however, heavily criticized the FDA's decision to enforce the warnings deadline as then scheduled, while other compliance deadlines were stayed pending the conclusion of rulemaking proceedings regarding the scope and content of cigar regulation.  *Id.* at 46–49.  The Court characterized that decision as "a grossly unfair exercise of agency authority."  *Id.* at 46.  The Court found it uncontested that the cigar industry "has expended millions of dollars in designing and creating new, conforming packaging" in advance of the August 10, 2018 effective date.  *Id.*  Yet the agency's new rulemaking docket seeks information "directly concern[ing] the health warnings mandate," and the "sheer breadth" of the rulemaking proceeding raises a troubling question:  Why is the agency "insisting" that cigar manufacturers "expend millions of dollars to conform to regulatory mandates that might be rescinded only months after their effective date?"  *Id.* at 46–47.  The Court recognized that requiring the incursion of "substantial compliance costs while the agency comprehensively reassesses the wisdom of regulation, *before* the warnings requirements go into effect, smacks of basic unfairness."  *Id.* at 47.

Mindful of the difficult issues before the Court, and with time running out until the August 10, 2018 effective date, Plaintiffs file this motion to enjoin the enforcement of the warnings requirements or to stay their effective date pending the D.C. Circuit's disposition of Plaintiffs' appeal or, in the alternative, pending this Court's resolution of Count V of Plaintiffs' complaint.

## ARGUMENT

This Court has ample authority to delay the effective date of the warnings requirements until the D.C. Circuit resolves Plaintiffs' impending appeal or the agency completes its rulemaking regarding how and which cigars should be regulated.  The warnings raise significant issues under the First Amendment, as they confiscate space on Plaintiffs' own packaging that they have used to speak with consumers and compel speech in an unduly burdensome and unjustified manner.  The Court itself recognized a tension between several D.C. Circuit decisions about the purposes for which the Government may compel a warning and what the Government must show to do so.  *See id.* at 29–38.  In addition, enforcing the warnings requirements while a rulemaking proceeding that may significantly change the scope and content of the regulation of cigars is a "grossly unfair exercise of agency authority," such that the equities lean sharply in favor of an injunction.  *Id.* at 46.

## I.    THE COURT SHOULD ENJOIN ENFORCEMENT OF THE WARNINGS REQUIREMENTS PENDING APPEAL OF ITS ORDER DENYING A PRELIMINARY INJUNCTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62(C)

The Court should grant an injunction pending appeal.  The Court has characterized the agency's failure to postpone the effective date of the warnings requirements pending its new rulemakings, and its insistence on enforcing the warnings requirements in just two months' time, as a "grossly unfair exercise of agency authority" and "smack[ing] of basic unfairness."  *Id.* at 46–47.  As such, the equities run strongly in favor of an injunction.  In such circumstances, Plaintiffs must only show a "substantial issue" of law to be presented to the Court of Appeals, not a likelihood of success.  As explained below, substantial issues of law abound in this case.

**A.    When the Equities Favor a Party Challenging Agency Action, the Court May Grant an Injunction Pending Appeal if There Is a Substantial Issue for the Appellate Court's Resolution**

The Court has authority to issue an injunction pending appeal pursuant to Federal Rule of Civil Procedure 62(c).  *See 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 289 F. Supp. 3d 73, 79–81 (D.D.C. 2018) (Mehta, J.) (enjoining agency action pending appeal). "A motion brought under Rule 62(c) is subject to the same four criteria as a motion for preliminary injunction."  *Id.* at 77.  The Court assesses "(1) the moving party's likelihood of success on the merits of its appeal, (2) whether the moving party will suffer irreparable injury, (3) whether issuance of the stay would substantially harm other parties in the proceeding, and (4) the public interest."  *Akiachak Native Cmty. v. Jewell*, 995 F. Supp. 2d 7, 12 (D.D.C. 2014).

The movant need not prevail on each factor, and when "the balance of equities sharply favors the party seeking injunctive relief . . . , a court clearly has discretion to grant an injunction pending appeal despite the adverse ruling."  *Chamber of Commerce v. Reich*, 897 F. Supp. 570, 584 (D.D.C. 1995).  In fact, "if the other elements are present (i.e. the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation."  *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)); *see also Shays v. FEC*, 340 F. Supp. 2d 39, 45 (D.D.C. 2004) ("The motion to stay may be granted when a 'serious legal question is presented, when little if any harm will befall other interested persons or the public, and when denial of the order would inflict irreparable injury on the movant.'").[4]  "[T]he Court need not determine that it

---

[4] Amidst "uncertainty" as to whether the D.C. Circuit's longstanding "sliding scale" framework for injunctive relief survived *Winter v. NRDC*, 555 U.S. 7 (2008), "courts in this jurisdiction

erred and will likely be reversed—an acknowledgement one would expect few courts to make." *Loving v. IRS*, 920 F. Supp. 2d 108, 110 (D.D.C. 2013).   Rather, "so long as the other factors strongly favor a stay, such remedy is appropriate if 'a serious legal question is presented.'"   *Id.* This is true even when the Court "disagrees with [the movant's] position, and finds there to be a low likelihood of success on the merits."   *Akiachak*, 995 F. Supp. 2d at 13; *see also Chamber of Commerce*, 897 F. Supp. at 584 (granting injunction pending appeal despite "conclud[ing] that on both procedural and substantive grounds, Plaintiffs' challenge . . . must fail").

> **B.**      **Plaintiffs Are Likely to Succeed or, at a Minimum, Present Serious Legal Questions on the Merits**

There can be little doubt that Plaintiffs' appeal will raise a "substantial" or "serious" issue.   Reaching the Court's ruling required four hours of oral argument, five months of taking the matter under advisement, and a 70-page opinion.   And the Court's constitutional holding turned on its interpretation of intersecting D.C. Circuit precedents and its resolution of questions of first impression in this Circuit.

First, this case presents the difficult question of what constitutes a "substantial state interest" for purposes of justifying a compelled warning or, as Plaintiffs argued, a restriction of speech through the significant confiscation of space on advertising and packages.   According to the Court, at least two D.C. Circuit precedents spoke to that issue:   *R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205 (D.C. Cir. 2012), and *American Meat Institute v. USDA*, 760 F.3d 18 (D.C. Cir. 2014) (*en banc*).   *See* Op. at 33–38.   The D.C. Circuit in *R.J. Reynolds* held that an interest in "'effective' communication" of the health risks of tobacco use is "not an independent interest capable of sustaining" a regulation implicating the First Amendment.   696 F.3d at 1221.   The

---

have continued to analyze motions for preliminary injunctions under the sliding scale approach." *Akiachak*, 995 F. Supp. 2d at 12; *see also 12 Percent Logistics*, 289 F. Supp. 3d at 77–78 (acknowledging that this "'remains an open question' in the D.C. Circuit").

interest rejected in *R.J. Reynolds* is very close to the FDA's claimed interest here in communicating the health risks of cigar use.  And the question is dispositive, as the agency did not claim that the cigar warnings requirements would reduce the use of cigars, as the D.C. Circuit had demanded in striking down the FDA's cigarette warnings scheme.  ECF No. 74, at 19–20, 22; ECF No. 77, at 8.

In *American Meat Institute*, the *en banc* D.C. Circuit upheld a small required disclosure of a meat product's country of origin and justified it through reference to the "'context and long history' of such disclosures; the consumer interest in extending such labeling to food products; and the 'individual health concerns and market impacts that could arise in the event of a food-borne illness outbreak.'"  *Id.* at 35 (quoting *American Meat Inst.*, 760 F.3d at 23).  The Court suggested that, if those much softer interests qualified as "substantial" in *American Meat Institute*, then improving the communication of the health risks of cigar consumption must qualify.  *Id.*

The Court so held, even though *American Meat Institute* expressly overruled another part of the D.C. Circuit's decision in *R.J. Reynolds*, but left the rest of that opinion intact.  *See American Meat Inst.*, 760 F.3d at 21–22; *see also Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) ("It is fixed law that 'this Court is bound to follow circuit precedent until it is overruled either by an *en banc* court or the Supreme Court.'").  The Court then undertook a very narrow reading of *R.J. Reynolds*, explaining that the D.C. Circuit's rejection of the FDA's asserted interest in improving communication of the health risks of tobacco use arose solely from the agency's failure to cite that interest in its Rule.  *See* Op. at 37; *but see R.J. Reynolds*, 696 F.3d at 1221 (holding that "FDA's interest in 'effectively communicating' the health risks of smoking is . . . not an independent interest capable of sustaining the Rule").  The Court also drew a distinction between an interest in improving the communication of health risks and an interest in actually communicating those risks.  *See* Op. at 36–37.  While a possible distinction, it is not

an obvious one, and the D.C. Circuit may take a different view of the breadth of its rejection of effective communication of tobacco product risks as a substantial state interest.

Second, the Court's ruling highlighted a critical tension between *American Meat Institute* and a later D.C. Circuit case, *National Association of Manufacturers v. SEC*, 800 F.3d 518 (D.C. Cir. 2015). The Court interpreted *American Meat Institute* as excusing the Government from providing *any* evidence of a compelled disclosure's effectiveness if the *Zauderer* test applied. *See* Op. at 39 ("Whereas the government would have to provide evidence of a measure's effectiveness to satisfy *Central Hudson*, 'such evidentiary parsing is hardly necessary' under *Zauderer*." (quoting *Am. Meat Inst.*, 760 F.3d at 26)). As a result, the Court's analysis of whether the warnings would "actually communicate" health risks spanned less than two pages. *See id.* at 38–40. But the Court did not address the D.C. Circuit's decision in *National Association of Manufacturers*, decided one year after *American Meat Institute*, in which the D.C. Circuit struck down a required disclosure of a company's use of conflict minerals and held that *Zauderer* requires proof that is more than "speculation or conjecture" that a disclosure will advance the Government's asserted interest. *Nat'l Ass'n of Mfrs.*, 800 F.3d at 525–26 (quoting *Edenfield v. Fane*, 507 U.S. 761, 770 (1993)); *see also Pub. Citizen, Inc. v. La. Attorney Disciplinary Bd.*, 632 F.3d 212, 228–29 (5th Cir. 2011) (striking down larger disclaimer absent evidence that it would be effective at communicating information to the public); ECF No. 77, at 21, 23 (discussing *National Association of Manufacturers* and *Public Citizen*); Hr'g Tr. 10:5–11:7, 14:18–15:18, 24:13–25:14, 26:4–21 (same). In doing so, the D.C. Circuit borrowed language from the Supreme Court's decision in *Edenfield* that explained how the Government must show a restriction of speech, analyzed under *Central Hudson*, advances a substantial government interest. *See Nat'l Ass'n of Mfrs.*, 800 F.3d at 525–26. This Court held that the

analysis of a measure's effectiveness is radically different depending on whether *Central Hudson* or *Zauderer* applies, but the tension among the D.C. Circuit's precedents on this issue at least presents a substantial question for the D.C. Circuit to resolve.

Third, whether a disclosure covering 20 percent of an advertisement is "unduly burdensome" under *Zauderer* is a substantial question:  A panel of the Ninth Circuit struck down a warnings requirement covering 20 percent of an advertisement as "unduly burdensome" under *Zauderer. Am. Beverage Ass'n v. City & Cty. of S.F.*, 871 F.3d 884, 894, 897 (9th Cir. 2017).  And then one of the *en banc* panels of the Ninth Circuit decided to rehear the case and stayed all proceedings pending the Supreme Court's disposition of another commercial speech case.  *See Am. Beverage Ass'n v. City & Cty. of S.F.*, 880 F.3d 1019 (9th Cir. 2018) (*en banc*), *proceedings stayed pending decision in Nat'l Inst. of Family & Life Advocates v. Becerra*, No. 16-1140 (U.S. 2018); *see also* Op. at 42 n.11 (discussing *Am. Beverage Ass'n*).  It is worth noting that the D.C. Circuit has confronted only one compelled warning as large and prominent as the FDA's cigar and pipe tobacco warnings.  That was the graphic cigarette warning, covering 50 percent of the package, and the D.C. Circuit struck that warning down.  *R.J. Reynolds*, 696 F.3d at 1217–22.  The required disclosure of country of origin at issue in *American Meat Institute* covered less than 1 percent of the package surface area (the warning is circled in red in the image below, lest it be overlooked):



Similarly, the conflict minerals disclosure, which the D.C. Circuit also struck down, was buried in a company's securities filing. *See Nat'l Ass'n of Mfrs.*, 800 F.3d at 522, 530. Upholding a warning of this size is a matter of first impression for the D.C. Circuit. That a panel of the Ninth Circuit held that a compelled warning covering 20 percent of an advertisement is "unduly burdensome" under *Zauderer* shows that this is "substantial question" on which a panel of the D.C. Circuit may disagree with this Court.

Fourth, this case implicates the explicitly open question in the D.C. Circuit of when a commercial disclosure otherwise subject to *Zauderer* becomes so large as to restrict speech under *Central Hudson*. Op. at 30 (citing *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 507 n.3 (D.C. Cir. 2016) ("*Zauderer* also noted that 'in some instances compulsion to speak may be

as violative of the First Amendment as prohibitions on speech.'  We do not opine here on when the compulsion to speak becomes more like a speech restriction than a disclosure." (citation omitted))).  The Court determined that the cigar and pipe tobacco warnings did not cross the D.C. Circuit's line and that the *Zauderer* test applied.  *Id.* at 31–32.  But, again, the D.C. Circuit has never upheld a warning remotely this large before, much less answered the question held open in *Pursuing America's Greatness* with respect to such a warning.  Where that line is drawn is, at a minimum, a "substantial" question for the D.C. Circuit's review.

In circumstances similar to the four substantial questions presented above, courts in this district have granted injunctive relief to preserve the status quo while the D.C. Circuit completes its own review.  *See Akiachak*, 995 F. Supp. 2d at 13–14 (granting stay despite "low likelihood of success on the merits" where it was "entirely possible that the D.C. Circuit will disagree with this Court's position on the regulation"); *Citizens for Responsibility & Ethics in Wash. v. Office of Admin.*, 593 F. Supp. 2d 156, 161 (D.D.C. 2009) (granting stay where "the question of whether OA is an 'agency'" under the governing statute was "not easily resolved by reference to the limited body of D.C. Circuit case law"); *McConnell v. FEC*, 253 F. Supp. 2d 18, 21 (D.D.C. 2003) (granting stay in part due to "divisions among the panel about the constitutionality of the challenged provisions" of the statute); *Chamber of Commerce*, 897 F. Supp. at 585 (granting stay, despite dismissing claims on both procedural and substantive grounds, because the case raised "serious, substantial, and difficult" questions regarding executive power); *U.S. v. W. Elec. Co., Inc.*, 774 F. Supp. 11, 13 (D.D.C. 1991) (denying motion to vacate stay given "difficulty" of "interpreting and applying" appellate opinion).  The same result should obtain here.

### C.    Plaintiffs Face Mounting Irreparable Harm

As this Court has already found, and "the FDA does not contest," Plaintiffs' members have "expended millions of dollars in designing and creating new, conforming packaging."  Op.

at 46.  Those costs continue to mount as the effective date of the rule approaches.  *See* ECF No. 61, at 37–38; ECF Nos. 61-5, 61-7, 61-11, 61-14.  Cigar and pipe tobacco manufacturers and retailers cannot wait until the eve of the August 10, 2018, compliance date to redesign their packages and communications with consumers.  Even if the Court of Appeals were to hear the merits quickly and rule in advance of August 10, which itself is highly unlikely, there would be substantial sums expended between the date of this filing and that ruling.

These compliance costs constitute irreparable harm because of the difficulty of recovering them from the agency.  *See R.J. Reynolds Tobacco Co. v. FDA*, 823 F. Supp. 2d 36, 50 (D.D.C. 2011) (FDA's APA violation "resulted in irreparable economic injury" where "plaintiffs could not recover money damages against the FDA"); *Smoking Everywhere, Inc. v. FDA*, 680 F. Supp. 2d 62, 77 n.19 (D.D.C. 2010) ("Where a plaintiff cannot recover damages from an agency because the agency has sovereign immunity, 'any loss of income suffered by the plaintiff is irreparable *per se*.'"); *see also Texas v. EPA*, 829 F.3d 405, 433–34 (5th Cir. 2016) ("'[C]omplying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs.'" (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220–21 (1994) (Scalia, J., concurring))); *Mann v. Wash. Metro. Area Transit Auth.*, 185 F. Supp. 3d 189, 195 (D.D.C. 2016) (Mehta, J.) ("For economic loss to constitute irreparable harm, 'legal remedies after the fact must be inadequate to restore the party seeking a stay to the status quo ante.'").  The First Amendment violation also precedes the effective date, as manufacturers and retailers practically are forced to distribute packages broadcasting the Government's message before the effective date, unable to turn on packages bearing warnings like a light switch on August 10.  *See R.J. Reynolds*, 823 F. Supp. 2d at 50–51 (irreparable harm where FDA tobacco warnings requirement "threaten[s]" "First Amendment interests"); *see also Gordon v. Holder*,

721 F.3d 638, 653 (D.C. Cir. 2013) (a "prospective violation of a constitutional right constitutes irreparable injury").  This factor strongly favors granting an injunction pending appeal.

### D.      The Balance of the Equities Favors Granting this Motion

The balance of equities among the parties tilts heavily in Plaintiffs' favor.  This Court already has concluded that "[r]equiring the premium cigar industry to incur substantial compliance costs while the agency comprehensively reassess the wisdom of regulation, *before* the warnings requirements go into effect, smacks of basic unfairness," and constitutes a "grossly unfair exercise of agency authority."  Op. at 46–47.  The agency hardly has an equitable stake in enforcing a regulation that it is considering eliminating (for a segment of the marketplace) or substantially changing.   In sum, "fundamental fairness strongly favors a stay for premium cigars."  *Id.* at 49; *see also McConnell*, 253 F. Supp. 2d at 21 (granting stay where litigants would "fac[e] potentially three different regulatory regimes in a very short time span").

### E.      Granting this Motion Would Serve the Public Interest

Granting an injunction pending appeal would be in the public interest.  As an initial matter, granting this motion would further the "substantial public interest in ensuring that [the FDA] acts within the limits of its authority."  *Clarke v. Office of Fed. Hous. Enter. Oversight*, 355 F. Supp. 2d 56, 66 (D.D.C. 2004); *see also 12 Percent Logistics*, 289 F. Supp. 3d at 81 ("Forcing federal agencies to comply with the law is undoubtedly in the public interest." (citation omitted)); *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009) (the "public interest is served when administrative agencies comply with their obligations under the APA").  Indeed, Congress effectively codified that public interest when it adopted Section 705 of the APA and authorized the courts to "postpone the effective date of an agency action" pending a definitive determination of the lawfulness of such action.  *See* 5 U.S.C. § 705; Section II, *infra* (discussing APA Section 705).

It is undoubtedly also in the public interest to forestall the potential infringement of free speech rights in violation of the First Amendment until the appellate courts are sure that this is not occurring.  *See Pursuing Am.'s Greatness*, 831 F.3d at 511 ("[T]here is always a strong public interest in the exercise of free speech rights otherwise abridged by an unconstitutional regulation."); *Gordon*, 721 F.3d at 653 ("[E]nforcement of an unconstitutional law is always contrary to the public interest.").  At minimum, the public interest will be "served by ensuring that plaintiffs' First Amendment rights are not infringed before the constitutionality of the regulation has been definitively determined." *Stewart v. D.C. Armory Bd.*, 789 F. Supp. 402, 406 (D.D.C. 1992).

Conversely, Defendants cannot demonstrate any cognizable harm to the public from a limited delay in the implementation of regulations not yet in force and presently subject to reconsideration by the FDA.  First, most cigar packages already bear health warnings with similar content pursuant to a consent decree with the Federal Trade Commission—albeit warnings that do not consume 30 percent of the two main panels of every package.  Those warnings will remain in place throughout the time this Court's injunction would be in effect. The Court held that the agency need not demonstrate a need for the larger warnings over the existing scheme to prevail on the constitutional claims, a point on which Plaintiffs disagree.  Op. at 39.  But the undisputed absence of evidence that such larger warnings are needed clearly establishes that a delay in those larger warnings, until substantial issues can be resolved, is not against the public interest.  In addition, the FDA provided no evidence (again, it said that it was not required to) that the larger warnings would reduce the use of cigars or pipe tobacco, much less enhance the public health.

Second, the FDA's own actions show that it does not have a significant interest in the timing of implementing these warnings on August 10, instead of at the conclusion of appellate proceedings.  The FDA waited *seven years* after the passage of the Family Smoking Prevention and Tobacco Control Act—the FDA's claimed authorizing legislation—to promulgate the rule requiring these warnings.  That rule set an effective date that itself was nearly *nine years* after the FSPTCA's enactment.  *See* 21 C.F.R. § 1143.13.  The agency recently pronounced that cigarettes stand at the most dangerous end of a "continuum of risk" among tobacco products.  *See* ECF No. 62-4.  Despite the agency's view that cigarettes present a greater risk to public health than cigars and pipe tobacco, the agency still has not revised the cigarette warnings scheme in the *six years* since the D.C. Circuit struck down the agency's proposed warnings covering 50 percent of the packages.  *See R.J. Reynolds*, 696 F.3d at 1208 (affirming invalidation of warnings in August 2012).  If an injunction pending appeal were not entered, the result would be that cigar and pipe tobacco warnings will be *substantially larger* than cigarette warnings starting on August 10.  The Court rejected this anomaly as a reason for rendering the cigar and pipe tobacco warnings scheme arbitrary and capricious.  Op. at 25.  But this paradox certainly demonstrates the lack of urgency in insisting that the larger cigar warnings go into effect *now*, before the completion of appellate review of substantial issues and before the agency completes its reconsideration of the requirement's scope and content.  The agency's own conduct shows the absence of such urgency.

As all factors support Plaintiffs, this Court should enjoin the enforcement of the warnings requirements pending appeal.

## II.     THE COURT SHOULD POSTPONE THE EFFECTIVE DATE OF THE WARNINGS AND PRESERVE THE STATUS QUO PURSUANT TO SECTION 705 OF THE APA

Through Section 705 of the APA, Congress provided a mechanism to preserve the status quo until an administrative agency's attempted regulatory change is subject to full judicial

review.  Section 705 provides that, "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal . . . , may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."  5 U.S.C. § 705.  By its terms, Section 705 authorizes a court to stay agency action when there is a proceeding for review pending in that court and irreparable injury will result absent a stay.  *See id.*; *In re GTE Serv. Corp.*, 762 F.2d 1024, 1026 (D.C. Cir. 1985).

This power is particularly important in the case of administrative rules:  Unlike statutes, no one elected by the American people has had a hand in crafting administrative rules.  Judicial review is the public's only safeguard against democratically unauthorized regulations, ensuring that the agency has not exceeded the authority provided by Congress or constitutional limits.[5]

This is precisely the type of case in which the Court should exercise its statutory authority and delay the effective date of the warnings requirements.  It should do so pending an appeal of its ruling regarding the warnings requirements or its resolution of Plaintiffs' challenge to the agency's rejection of its own proposed Option 2, which would have narrowed the scope of

---

[5] While some courts have held that motions to stay agency action under Section 705 should be analyzed under a variation of the four-pronged test for preliminary injunctions, *e.g.*, *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 30 (D.D.C. 2012), the D.C. Circuit has never squarely held as much, and for good reason:  The text of Section 705 contains no such directive.  Congress expressly provided for stays (1) "on such conditions as may be required" and (2) "to the extent necessary to prevent irreparable injury."  5 U.S.C. § 705.  It did not layer on the additional equitable standards for injunctive relief, a background principle of law of which the legislature is presumed to be aware.  *See, e.g.*, *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014).  Consistent with these principles, courts in this district have stayed the effective date of regulations under Section 705 based solely on the complexity of the case before the court and the threat of irreparable harm.  *See FBME Bank Ltd. v. Lew*, 209 F. Supp. 3d 299, 310 (D.D.C. 2016); Order, *FBME Bank*, No. 1:15-cv-01270-CRC (D.D.C. July 22, 2016), ECF No. 82 (Ex. A).  In any event, even if the Court were to disagree and hold that the four-part preliminary injunction test applies to motions under Section 705, Plaintiffs would prevail for the reasons detailed in Section I, above.

cigars subject to regulation and which the agency is reconsidering through its pending rulemaking docket.[6]

First, the Court has observed the profound unfairness and the "grossly unfair exercise of agency authority" entailed in enforcing the warnings requirements, and mandating a complete and expensive redesign of the packages of Plaintiffs' members, while the agency reconsiders the scope of that requirement's application and its content. Op. at 46–47. In these circumstances, as the Court effectively has already held, the equities counsel strongly in favor of postponing the effective date of the warnings requirements. *See id.* at 47, 49. And other courts have stayed an onerous regulatory requirement pending its reconsideration by the agency. *See Portland Cement Ass'n v. EPA*, 665 F.3d 177, 189 (D.C. Cir. 2011) (staying regulation pending a potential agency revision of the regulatory scheme in a pending rulemaking); *see also McConnell*, 253 F. Supp. 2d at 20 (granting stay of judgment pending appeal where litigants would "fac[e] potentially three different regulatory regimes in a very short time span").

Second, claims for remedying such unfairness are properly presented to the Court. The Court held it could do nothing to redress the FDA's "grossly unfair exercise of agency authority," in part, because the Plaintiffs had not directly "challenge[d] . . . the FDA's refusal to stay the warnings requirement" during the new rulemaking proceedings. Op. at 46, 48. With the greatest of respect, Plaintiffs submit that the Court is mistaken regarding the agency action that should be challenged. It is the enforcement of the Rule's warnings requirements that is causing injury, and Plaintiffs properly challenged enforcement of the Rule. The Government's partial stay, and its failure to explain why it was delaying enforcement of some parts of the Rule until

---

[6] Plaintiffs recognize that Count V pertains only to the regulatory treatment of cigars and, as a result, should the Court select only this ground for relief, the effective date of the cigar warnings requirements alone could be stayed.

completion of its announced rulemaking, but not others, is *one reason* why enforcement of the warnings requirements is arbitrary and capricious and should be set aside.  And that *reason* was fully set forth in the briefing on Plaintiffs' motion for partial summary judgment and a preliminary injunction, in their prompt notice of supplemental authority after the release of the new rulemaking docket, and at oral argument.  *See* ECF No. 62, at 1, 13–14; ECF No. 78, at 33; ECF No. 92, at 1; Hr'g Tr. 63:5–12, 64:11–17.  But the final agency action to be challenged, as it was in the Complaint, is enforcement of the Rule.  ECF No. 1, ¶¶ 1, 5, 133.

And that reason why the agency's enforcement of the warnings requirements during its new rulemaking proceedings violates the law is compelling.  The agency's continued enforcement of the warnings requirements, while staying enforcement of other aspects of the Rule without explaining the differential treatment, renders that enforcement arbitrary and capricious under the APA.  As the Court correctly observed, "'[a]n agency must provide an adequate explanation to justify treating similarly situated parties differently.'"  Op. at 49 (quoting *Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776–77 (D.C. Cir. 2005)); *see also Petroleum Commc'ns, Inc. v. FCC*, 22 F.3d 1164, 1172 (D.C. Cir. 1994) ("We have long held that an agency must provide adequate explanation before it treats similarly situated parties differently.").  Because the extensions of effective dates were joined with the FDA's announcement of new rulemaking dockets, the justification for the extensions was presumably to avoid the costs of compliance with regulatory mandates that may be modified through those dockets.  The FDA's unexplained failure to follow that same rationale and extend the effective date for compliance with the new health warnings is arbitrary and capricious.  *See Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 59 (D.C. Cir. 2015) (noting that the D.C. Circuit "ha[s] often declined to affirm an agency decision if there are unexplained

inconsistencies" in the agency's action, and citing cases); *Gen. Chem. Corp. v. United States*, 817 F.2d 844, 846 (D.C. Cir. 1987) (agency decision was arbitrary and capricious because it was "internally inconsistent and inadequately explained"); *see also Chamber of Commerce of U.S.A. v. U.S. Dep't of Labor*, 885 F.3d 360, 382 (5th Cir. 2018) ("Illogic and internal inconsistency are characteristic of arbitrary and unreasonable agency action.").

Further, the D.C. Circuit has made clear that the agency must take account of parallel rulemakings that could modify the Rule it is seeking to enforce. *See Portland Cement Ass'n*, 665 F.3d at 187 (it is arbitrary and capricious for an agency to "bas[e] its decision on a premise the agency itself has already planned to disrupt"). In *Portland Cement Association*, the Court held arbitrary and capricious an Environmental Protection Agency rule issued amidst another rulemaking, the timing and speed of which was entirely in the agency's control, that could subject the regulated industry to modified requirements and unnecessary compliance expense. *Id*. While in *Portland Cement Association* that parallel rulemaking had been initiated just before the challenged rule had become final, *id.*, both a final rule and the manner in which it is enforced are subject to review for arbitrariness and caprice. *See, e.g.*, *Airmark Corp. v. FAA*, 758 F.2d 685, 691–92 (D.C. Cir. 1985) (agency's "grossly inconsistent and patently arbitrary" enforcement of regulation violated APA); *Green Country Mobilephone, Inc. v. FCC*, 765 F.2d 235, 237 (D.C. Cir. 1985) (agency's waiver of deadlines for some applicants but not others was abuse of discretion because agency "invoked the rule inconsistently" and "has not treated similar cases similarly"). Here, too, the FDA has initiated a process to reorder the regulatory landscape, yet it continues to enforce a burdensome requirement that it may change.

Third, relevant "review proceedings" are "pending," as required by Section 705. *See* 5 U.S.C. § 705. As an initial matter, Plaintiffs intend imminently to appeal the Court's ruling

denying a preliminary injunction on the basis of the First Amendment and APA challenges to the warnings requirements. As explained in Section I above, this appeal raises complex questions that themselves justify a stay pending appeal.

In addition, Plaintiffs' challenge to the agency's rejection of its own proposed Option 2, which would have exempted a category of cigars from regulation, also is currently "pending." Exempting a category of cigars from some or all of the regulatory scheme is the express purpose of the agency's pending rulemaking proceeding. *See* ECF No. 87-1 ("FDA is aware that there is still interest in exempting these products from regulation or regulating them in a different manner from other cigars and, therefore, intends to issue an advance notice of proposed rulemaking requesting scientific information that might support such an action."). And, as the Court explained at length, that reconsideration extends to the warnings requirements themselves, which are explicitly referenced in the ANPRM. Op. 94, at 46–47; 83 Fed. Reg. at 12,903–04.

The Court suggested that Plaintiffs had failed to press for an immediate ruling on their challenge to the FDA's decision not to exempt a category of cigars from regulation and thus that claim (Count V) could not serve as a foundation for granting relief. Op. at 48. The Government, however, sought to stay the Option 2 challenge, to conserve its own and judicial resources, because the FDA's "announced regulatory actions may materially change the regulatory scheme underlying th[at] claim[.]" ECF No. 53, ¶ 4. In essence, the Government argued that the results of the new rulemaking are likely to moot Count V—that is, *effectively grant all the relief sought therein*. Section 705 provides the Court with ample authority to postpone the effective date of the warnings requirements, pending the resolution of Count V of the Complaint, solely on the basis of the Government's assertion that it may moot that claim. To the extent a preliminary

assessment of Count V's merits is necessary, Plaintiffs' superseded motion for summary judgment filed on February 13, 2017, sets forth those arguments.  *See* ECF No. 22, at 18–34.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion, enter the Proposed Order attached hereto, and grant Plaintiffs such other and further relief as this Court deems just and proper.

Dated: June 8, 2018

Respectfully submitted,

/s/ *Michael J. Edney*
Michael J. Edney, DC Bar No. 492024
Ryan E. Meltzer, Texas Bar No. 24092821
NORTON ROSE FULBRIGHT US LLP
799 9th Street, NW, Suite 1000
Washington, DC 20001-4501
Telephone:  (202) 662-0200
Fax:  (202) 662-4643
michael.edney@nortonrosefulbright.com
ryan.meltzer@nortonrosefulbright.com

*Attorneys for Plaintiffs International Premium Cigar and Pipe Retailers Association and Cigar Rights of America*

/s/ *Mark S. Raffman*
Mark S. Raffman, DC Bar No. 414578
Andrew Kim, DC Bar No. 1029348
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC 20001
Telephone:  (202) 346-4000
Fax:  (202) 346-4444
mraffman@goodwinlaw.com
andrewkim@goodwinlaw.com

*Attorneys for Plaintiff Cigar Association of America*