**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CIGAR ASSOCIATION OF AMERICA, INTERNATIONAL PREMIUM CIGAR AND PIPE RETAILERS ASSOCIATION, AND CIGAR RIGHTS OF AMERICA, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | Civil Action No. 16-1460 (APM) |
| v. | ) ) | |
| UNITED STATES FOOD AND DRUG ADMINISTRATION, et al., | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

**REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION
FOR A STAY OR INJUNCTION PENDING APPEAL OR, IN THE ALTERNATIVE,
PENDING RESOLUTION OF COUNT V OF PLAINTIFFS' COMPLAINT**

Dated: June 29, 2018

Michael J. Edney, DC Bar No. 492024
Ryan E. Meltzer, Texas Bar No. 24092821
NORTON ROSE FULBRIGHT US LLP
799 9th Street, NW, Suite 1000
Washington, DC 20001-4501
Telephone:  (202) 662-0200
Fax:  (202) 662-4643
michael.edney@nortonrosefulbright.com
ryan.meltzer@nortonrosefulbright.com

*Attorneys for Plaintiffs International Premium
Cigar and Pipe Retailers Association and
Cigar Rights of America*

Mark S. Raffman, DC Bar No. 414578
Andrew Kim, DC Bar No. 1029348
GOODWIN PROCTER LLP
901 New York Avenue NW
Washington, DC 20001
Telephone:  (202) 346-4000
Fax:  (202) 346-4444
mraffman@goodwinlaw.com
andrewkim@goodwinlaw.com

*Attorneys for Plaintiff Cigar Association of
America*

## **<u>TABLE OF CONTENTS</u>**

**Page(s)**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.   THE RECONCILIATION OF CIRCUIT COURT PRECEDENTS WITH EACH
     OTHER AND WITH THE SUPREME COURT'S RECENT DECISION WILL
     PRESENT SERIOUS LEGAL QUESTIONS ON APPEAL ........................................... 3

II.  THE GOVERNMENT HAS NO ANSWER TO THE COURT'S CRITIQUE
     OF ITS "GROSSLY UNFAIR EXERCISE OF AGENCY AUTHORITY"
     IN ENFORCING THE WARNINGS REQUIREMENT .................................................. 8

III. THE GOVERNMENT'S BRIEF MISSTATES THE STANDARDS
     GOVERNING A RULE 62(C) APPLICATION IN THE D.C. CIRCUIT .................... 11

IV.  THE COURT SHOULD POSTPONE THE EFFECTIVE DATE OF
     THE WARNINGS REQUIREMENTS UNDER SECTION 705 OF
     THE ADMINISTRATIVE PROCEDURE ACT ........................................................... 14

CONCLUSION ................................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014) .......................................................13

*Akiachak Native Cmty. v. Jewell*, 995 F. Supp. 2d 7 (D.D.C. 2014) .........................................7, 13

*Am. Beverage Ass'n v. City & Cty. of S.F.*, 871 F.3d 884 (9th Cir. 2017) .....................................6

*Am. Beverage Ass'n v. City & Cty. of S.F.*, 880 F.3d 1019 (9th Cir. 2018) (*en banc*) ..................6

*Am. Meat Inst. v. USDA*, 760 F.3d 18 (D.C. Cir. 2014) (*en banc*) .........................................4, 5, 7

*Artis v. Bernanke*, 161 F. Supp. 3d 97 (D.D.C. 2013) ...................................................................14

*Bates v. State Bar of Ariz.*, 433 U.S. 350 (1977) ...........................................................................4

*Bracco Diagnostics, Inc. v. Shalala*, 963 F. Supp. 20 (D.D.C. 1997) ............................................9

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006)....................9, 10

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010).................................................................................................12, 13

*Common Cause v. Judicial Ethics Comm.*, 473 F. Supp. 1251 (D.D.C. 1979) ............................13

*Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Rep.*, 240 F. Supp. 2d 21 (D.D.C. 2003) ............6

*Golden Gate Rest. Ass'n v. City & Cty. of S.F.*, 512 F.3d 1112 (9th Cir. 2008) ..........................11

*Heckler v. Chaney*, 470 U.S. 821 (1985) ......................................................................................14

*League of Women Voters v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) .................................................12

*Loving v. IRS*, 920 F. Supp. 2d 108 (D.D.C. 2013) ...................................................................7, 13

*McCormack v. Hiederman*, 694 F.3d 1004 (9th Cir. 2012)...........................................................12

*Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518 (D.C. Cir. 2015) ...........................................................7

*\*Nat'l Inst. of Family and Life Advocates v. Becerra*,
    No. 16-1140 (June 26, 2018) (Exhibit A) ...........................................................1, 3, 4, 5, 6, 7

*R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205 (D.C. Cir. 2012) ..................................2, 7, 10

*R.J. Reynolds Tobacco Co. v. FDA*, 823 F. Supp. 2d 36 (D.D.C. 2011) .........................................9

*In re R.M.J.*, 455 U.S. 191 (1982).................................................................................................4

*Reilly v. Harrisburg*, 858 F.3d 173 (3d Cir. 2017) ........................................................................12

*Sampson v. Murray*, 415 U.S. 61 (1974) ........................................................................14

*Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4 (1942) ........................................................14, 15

*Sherley v. Sebelius*, 644 F.3d 388 (D.C. Cir. 2011) ........................................................12

*Skinner v. Switzer*, 562 U.S. 521 (2011) ........................................................15

*Soundboard Ass'n v. FTC*, 254 F. Supp. 3d 7 (D.D.C. 2017) (Mehta, J.) ........................................12

*Texas v. EPA*, 829 F.3d 405 (5th Cir. 2016) ........................................................9

*Va. Bd. of Pharmacy v. Va. Citizens Consumer Council*, *Inc.*, 425 U.S. 748 (1976) ........................4

*\*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
     559 F.2d 841 (D.C. Cir. 1977) ........................................................12, 13

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ........................................................12

**Statutes, Rules, and Regulations**

5 U.S.C. § 705 ........................................................................14, 15

21 C.F.R. § 1143.5 ........................................................................5, 6

Cal. Health & Safety Code § 123472 ........................................................................3

Family Smoking Prevention and Tobacco Control Act,
     Pub. L. No. 111–31, 123 Stat. 1776 (2009) ........................................................10, 11

Fed. R. Civ. P. 8 ........................................................................15

Fed. R. Civ. P. 54 ........................................................................14

Fed. R. Civ. P. 62 ........................................................................8, 12, 13, 14

Food, Drug, and Cosmetic Act § 901, 21 U.S.C. § 387a ........................................................10

Food, Drug, and Cosmetic Act § 906, 21 U.S.C. § 387f ........................................................11

**Other Authorities**

11 Charles A. Wright et al., *Fed. Prac. and Procedure* § 2904 (3d ed. 2018) ........................13, 14

13 Robert L. Haig, *Business & Commercial Litigation in the Federal Courts*
     § 139:49 (4th ed. 2017) ........................................................................9

## INTRODUCTION

The Supreme Court's decision in *National Institute of Family and Life Advocates v. Becerra*, No. 16-1140 (June 26, 2018) ("*Becerra* Op.") (attached as Exhibit A), demonstrates that the pending appeal will raise serious questions regarding the level of scrutiny applicable to compelled commercial disclosures.  Applying the Supreme Court's *Zauderer* test, the Court struck down a compelled disclosure in certain clinics providing pregnancy-related services. Elaborating on *Zauderer*'s directive that "a disclosure requirement cannot be 'unjustified or unduly burdensome,'" the Court explained that "[o]ur precedents require disclosures to remedy a harm that is 'potentially real not purely hypothetical,' and to extend 'no broader than reasonably necessary.'"  *Becerra* Op. 17 (citations omitted).  Applying those standards, the Court then held California's mandated disclosure "unduly burdensome" under *Zauderer*.  It found that the law's requirements to "call attention to the notice, instead of [the business's] own message" through "larger text or contrasting type or color," and in several languages, "drowns out the facility's own message." *Becerra* Op. 19.

Applying pre-existing D.C. Circuit law, this Court held that *Zauderer* did not require "evidentiary parsing" of the "measure's effectiveness," or any inquiry into whether the FDA had adequately considered alternatives including the "existing FTC warning scheme."   Opinion ("Op.") at 39, ECF No. 94.   This Court further held that the warnings were not "unduly burdensome under *Zauderer*" because they left some space for Plaintiffs to speak, even if the Government's became the most prominent message.  Op. 43.  The D.C. Circuit will need to determine whether such a relaxed level of review regarding the size and intrusiveness of the warnings, and the availability of adequate alternatives, survives the Supreme Court's opinion in *Becerra*.  The revision of the *Zauderer* test in *Becerra*, which is fully applicable to this pending

case, raises a substantial question of law, and a likelihood of success, that counsels in favor of an injunction pending appeal.

Even before the Supreme Court's opinion in *Becerra*, the circumstances of this case strongly tilted in favor of an injunction pending appeal.  The highly technical and procedural arguments to which the Government's brief is dedicated, and which are themselves demonstrably wrong, suggest that an injunction pending appeal should be granted.  The Government barely touches the substance of the serious issues that will be before the Court of Appeals, other than to say that they do not merit a stay because the Court decided them in favor of the Government.  Of course, that is not the legal standard, or else injunctions pending appeal would never occur.

Moreover, the Government says not one word disputing this Court's finding that its continued enforcement of the warnings requirements, even as it delayed other compliance dates to accommodate a pending rulemaking proceeding, is a "grossly unfair exercise of agency authority."  Op. 46.  Nor does the Government provide any explanation for the time urgency of the warning requirements' implementation, even as it has not lifted a finger to impose large warnings on cigarettes—the "most harmful" of tobacco products "on a continuum of risk" and the cause of the "overwhelming amount of death and disease attributable to tobacco"—now six years after its last effort to do so was struck down.  *See* Press Release, FDA, FDA Announces Comprehensive Regulatory Plan to Shift Trajectory of Tobacco-Related Disease, Death (July 28, 2017) at 1-2, ECF No. 62-4; *R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205, 1208 (D.C. Cir. 2012).  Through its silence, the Government effectively concedes that the equities and the public interest weigh heavily in favor of an injunction pending appeal.

## ARGUMENT

### I.      THE RECONCILIATION OF CIRCUIT COURT PRECEDENTS WITH EACH OTHER AND WITH THE SUPREME COURT'S RECENT DECISION WILL PRESENT SERIOUS LEGAL QUESTIONS ON APPEAL

The Supreme Court's June 26, 2018, decision in *National Institute of Family and Life Advocates v. Becerra* assures that this case will raise serious and substantial questions as to which D.C. Circuit precedents, including those on which the Court relied, remain intact.  To the extent such a showing is necessary, the decision demonstrates Plaintiffs' likelihood of success on appeal.

In *Becerra*, the Supreme Court struck down a California statute mandating that clinics offering pregnancy-related services other than through State-licensed medical professionals disclose their unlicensed status.  The text of the notice is as follows:  "This facility is not licensed as a medical facility by the State of California and has no licensed medical provider who provides or directly supervises the provision of services."   Cal. Health & Safety Code § 123472(b)(1).  Under terms very similar to the retail signage requirements in the instant case, the notice must be placed on a sign at the entrance of the clinic and in at least one waiting room, on a standard 8.5" x 11" poster in at least 48 point font.  Cal. Health & Safety Code § 123472(b)(2).  The clinics must also include the disclosure in any advertising in "larger point type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks that call attention to the language."  Cal. Health & Safety Code § 123472(b)(3); *see also Becerra* Op. 5 (discussing the formatting requirements).

The Court set forth a more demanding standard to satisfy *Zauderer*, particularly with regard to the tailoring a government agency must undertake.  The Court held that, under *Zauderer*, "[o]ur precedents require disclosures to remedy a harm that is 'potentially real not

purely hypothetical,' and to extend 'no broader than reasonably necessary.'" *Becerra* Op. 17.  In establishing the standard, the Court cited several cases evaluating restrictions of commercial speech, suggesting that several aspects of the *Central Hudson* test may also apply under the *Zauderer* test.  *Id.* (citing *In re R.M.J.*, 455 U.S. 191, 203 (1982); *Va. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 772, n.24 (1976); *Bates v. State Bar of Ariz.*, 433 U.S. 350, 384, (1977)).  This was not an accidental oversight.  Justice Breyer, writing the main dissent, criticized the Court for changing the *Zauderer* standard by "appl[ying] a searching standard of review based on our precedents that deal with speech *restrictions*, not *disclosures*." *Becerra* Op. 21-21 (Breyer, J., dissenting) (emphases in original); *see also Becerra* Op. 16-17 (majority opinion) (responding to certain criticisms in the dissent).  This approach, the dissent charged, "was incompatible with *Zauderer*" and its suggestion that a disclosure need only be "reasonably related to the State's interest."  *Becerra* Op. 21 (Breyer, J., dissenting) (quotation marks omitted).

The majority's binding interpretation of the *Zauderer* test is similarly incompatible with this Court's application of *Zauderer* in this case.  This Court explained that "[w]hereas the government would have to provide evidence of a measure's effectiveness to satisfy *Central Hudson*, 'such evidentiary parsing is hardly necessary' under *Zauderer*."  Op. 39 (quoting *Am. Meat Inst. v. USDA*, 760 F.3d 18, 26 (D.C. Cir. 2014) (*en banc*)).  "For this reason," this Court explained, the FDA need "not examine whether the existing FTC warning scheme was insufficient to communicate health risks of cigars before promulgating the Deeming Rule."  *Id.* To reach this conclusion, the Court relied heavily on the D.C. Circuit's decision in *American Meat Institute*, which concluded that a "reasonably crafted mandate to disclose purely factual and uncontroversial information about attributes of the product or service being offered . . . will

almost always demonstrate a reasonable means-end relationship, absent a showing that the disclosure is unduly burdensome in a way that chills protected commercial speech." *Am. Meat Inst.*, 760 F.3d at 26 (quotation marks omitted); *see also* Op. 40.

This relaxed interpretation of *Zauderer* cannot be squared with *Becerra*. The Supreme Court made clear that testing the fit between means and ends is not over once a disclosure is established as purely factual and uncontroversial, as suggested in this Court's quotation from *American Meat Institute*. The Supreme Court instead required that a disclosure requirement "extend no broader than reasonably necessary." *Becerra* Op. 17. That test requires a showing— one that the FDA did not make—that narrower disclosure requirements would not have fulfilled the FDA's interest in better informing consumers about the health risks of cigars. That would necessarily include a review of the smaller FTC warnings, contrary to this Court's holding.

This Court's analysis is also inconsistent with the Supreme Court's treatment of the formatting requirements in *Becerra*. The Supreme Court held that the California-required disclosure was too big such that it "drowns out the facility's own message." *Compare Becerra* Op. 19 *with* Op. 40 (rejecting argument that cigar warnings would "drown out" manufacturer and retailer messages). With regard to advertising, the Supreme Court was confronting a statute that required a font as large as the text surrounding the disclosure. *Becerra* Op. 5, 19. In this case, the record is replete with evidence that the FDA warnings' font—covering 30 percent of the box as it must—will be as large as any other text on the package, much less just the text immediately surrounding the warning. *See* Brady Dec. Ex. A (ECF No. 61-6); Trowbridge Dec. Exs. A–B (ECF Nos. 61-8, 61-9); Trowbridge Second Dec. Ex. A (ECF No. 78-4). Moreover, the FDA warnings' black-text-in-white-box requirement tracks the California requirements that the disclosure be set off from the surrounding advertisement. *See* 21 C.F.R. § 1143.5(b)(2)(iii)

(warnings must appear in "conspicuous . . . black text on a white background or white text on a black background in a manner that contrasts by typography, layout, or color, with all other material on the advertisement").

This Court's analysis likely would not survive an application of *Becerra*.  At a minimum, however, this case will present a substantial question of reconciling *Becerra* with the D.C. Circuit's prior precedents.  *See Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 240 F. Supp. 2d 21, 22 (D.D.C. 2003) (granting stay pending appeal where case was "the first to involve the application of the Supreme Court's recent decision . . . , in the context of earlier pronouncements of the District of Columbia Circuit").  There is absolutely no question that a reasonable panel of the Court of Appeals would view the outcome of *Becerra* as very relevant to determining the constitutionality of a warning that covers, for example, 20 percent of an advertisement.  A panel of the Ninth Circuit struck down a San Francisco requirement that a warning cover 20 percent of certain beverage advertisements.  *See Am. Beverage Ass'n v. City & Cty. of S.F.*, 871 F.3d 884, 894, 897 (9th Cir. 2017).  One of the two *en banc* panels of the Ninth Circuit granted review, but stayed consideration pending the outcome in *Becerra*.  *See Am. Beverage Ass'n v. City & Cty. of S.F.*, 880 F.3d 1019 (9th Cir. 2018) (*en banc*).  Then, once *Becerra* was decided, the court ordered supplemental briefing "addressing the effect of the Supreme Court's opinion . . . on the Plaintiffs-Appellants' First Amendment claims."  Order, *Am. Beverage Ass'n*, No. 16-16072 (9th Cir. Jun. 27, 2018), ECF No. 136.  It is no leap to surmise that a panel of the D.C. Circuit may similarly find *Becerra* relevant to a warnings mandate covering 20 percent of advertisements, as is at issue here.

This case would have presented substantial issues even absent *Becerra* given several intersecting D.C. Circuit precedents.  Plaintiffs' Motion at 10-15, ECF No. 95.  The Government

engages in lengthy defenses of this Court's treatment of those issues, but in doing so misses the point.  An injunction pending appeal does not become unavailable because the Court "already considered and rejected" Plaintiffs' constitutional claims.  Government's Opposition ("Opp.") at 4, ECF No. 99.  To the contrary, "the Court need not determine that it erred and will likely be reversed" to grant Plaintiffs' motion.  *Loving v. IRS*, 920 F. Supp. 2d 108, 110 (D.D.C. 2013); *see also Akiachak Native Cmty. v. Jewell*, 995 F. Supp. 2d 7, 13-14 (D.D.C. 2014).

The relevant inquiry is whether there are significant questions for the Court of Appeals to resolve.  What did the D.C. Circuit mean in *RJ Reynolds* when it limited the permissible justifications for warnings on tobacco products to reducing tobacco use and characterized more effective communication as a "means" rather than a substantial state interest in itself?  *See R.J. Reynolds Tobacco Co.,* 696 F.3d at 1221.  To what extent does the D.C. Circuit's articulation of the *Zauderer* test borrow from the *Central Hudson* standard, particularly regarding the evidence required to show that the disclosure will advance a substantial state interest?  *See Am. Meat Inst.*, 760 F.3d at 25-27 (suggesting that *Zauderer* borrows several elements of *Central Hudson*); *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 525-26 (D.C. Cir. 2015) (later applying the bar against reliance on "speculation or conjecture," from *Edenfield v. Fane*'s application of the *Central Hudson* test, to strike a mandated disclosure under *Zauderer*).  This question has taken on greater significance in light of the Supreme Court's announced requirement that a disclosure "extend 'no broader than reasonably necessary'" to satisfy *Zauderer*, again borrowed from *Central Hudson* precedents.  *See Becerra* Op. 17.  A holding that *Zauderer* demands meaningful evidence of a fit between means and ends would require more searching review of the FDA's assertions that consumer misunderstanding of health risks of cigar and pipe tobacco use exists, and that the new warnings would improve upon the FTC warnings in addressing that problem.  And whether the

size of the warnings is unduly burdensome is clearly a substantial question, as a panel of the Ninth Circuit came out exactly opposite from this Court on an identically sized warning covering 20 percent of certain beverage advertisements.  As the Government refuses to acknowledge, the D.C. Circuit has never confronted warnings so large as those before this Court.  Whether they are unduly burdensome and whether they trip the D.C. Circuit's test for a disclosure crossing over into a restriction of speech are questions the D.C. Circuit should have an opportunity decide while the status quo is maintained.

## II.    THE GOVERNMENT HAS NO ANSWER TO THE COURT'S CRITIQUE OF ITS "GROSSLY UNFAIR EXERCISE OF AGENCY AUTHORITY" IN ENFORCING THE WARNINGS REQUIREMENT

The weakness of the Government's opposition is that it picks and chooses from this Court's opinion.  It revels in the Court's view of the merits of the constitutional claims, but it refuses to address the Court's evaluation of the fairness and equities of enforcing the warnings requirements on August 10, while a rulemaking proceeding that may change those requirements is underway and other deadlines have been extended.  The Court called that a "grossly unfair exercise of agency authority."   Op. 46.   By contrast, Plaintiffs acknowledge, although respectfully disagree with, the Court's resolution of the merits and have tried to explain why a panel of the D.C. Circuit may diverge from the Court in ways relevant to the Rule 62(c) standard. Because the Government refuses to address this Court's apparent resolution of the equities of enforcing the warnings requirements on August 10, the Court should hold that the equities tilt strongly in favor of an injunction.

So too with regard to the irreparable harm faced by Plaintiffs.  The Court already held that the cigar industry is expending "millions of dollars in designing and creating new, conforming packaging," and that the agency is "[r]equiring the premium cigar industry *to incur substantial compliance costs* while the agency comprehensively reassesses the wisdom of

regulation." Op. 46-47 (emphasis added). Rather than addressing the point, the Government merely recycles contested case law from its opposition brief on the merits, requiring that compliance costs be "substantial" to be irreparable, without addressing squarely the Court's holdings on these issues. *See* Opp. 6; *but see Bracco Diagnostics, Inc. v. Shalala*, 963 F. Supp. 20, 28 (D.D.C. 1997) (economic losses for small companies including "time and person power" and "millions of dollars in costs" were irreparable). In any event, it is far from settled that an irretrievable financial loss must also pass a "seriousness" threshold before an injunction may issue. *See R.J. Reynolds Tobacco Co. v. FDA*, 823 F. Supp. 2d 36, 50 (D.D.C. 2011) (recognizing "irreparable economic injury . . . even absent a threat to plaintiffs' viability" given "inability to recover costs from the FDA"); *see also Texas v. EPA*, 829 F.3d 405, 433-34 (5th Cir. 2016) ("When determining whether injury is irreparable, 'it is not so much the magnitude but the irreparability that counts.'"); 13 Robert L. Haig, *Business & Commercial Litigation in the Federal Courts* § 139:49 (4th ed. 2017) ("[C]ourts have repeatedly held that unrecoverable economic losses are a quintessential form of irreparable harm. Agencies regularly argue for a different rule, under which economic losses constitute irreparable harm only when agency action threatens a company's very existence. That argument is unsound and at odds with recent precedent.").

The defect in the Government's argument continues as it pulls a quote from a D.C. Circuit case to argue that the "mere incantation of the First Amendment" will not establish irreparable harm. Opp. 6 (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 301 (D.C. Cir. 2006)). The Government neglects to include that the D.C. Circuit was distinguishing situations where plaintiffs fail to "establish they are or will be engaging in constitutionally protected behavior." *See Chaplaincy*, 454 F.3d at 301 (finding irreparable harm

in context of Establishment Clause claim).  The suggestion that compelled disclosures do not implicate constitutionally protected behavior is belied by a Supreme Court decision just this week and numerous D.C. Circuit cases evaluating such mandates.

Nor does the Government make any meaningful case of its need, or the "public interest," involved in enforcing the warnings requirements on August 10, as opposed to after the conclusion of this case or the FDA's pending rulemaking.  After all, that is the precise issue at stake in this motion.  The Government says nothing about its waiting nine years after the enactment of the alleged authorizing legislation to enforce these warnings.  More curiously, the Government does not, and really cannot, defend imposing warnings on cigars now, including the premium cigars whose warnings it is reconsidering, that are larger than those required for cigarettes.  After all, the FDA called cigarettes the "most harmful" of tobacco products "on a continuum of risk" and the cause of the "overwhelming amount of death and disease attributable to tobacco."  *See* ECF No. 62-4, at 1-2.  And the FDA has done nothing to increase the size of cigarette warnings since its last effort to do so was struck down *in 2012*.  *See R.J. Reynolds Tobacco Co.*, 696 F.3d at 1208.

Against this backdrop, the Government makes the brazen claim that entering an injunction pending appeal would somehow thwart the will of Congress and thus clearly offend the public interest.  Opp. 7.  That claim is a startling misreading of the Family Smoking Prevention and Tobacco Control Act (the "TCA").  *See* Pub. L. No. 111–31, 123 Stat. 1776 (2009).  It is the cigarette warnings, which the agency is ignoring despite its July 28 announcement on the risk continuum, that are statutorily required.  *See* Food, Drug, and Cosmetic Act ("FD&C Act") § 901(b), 21 U.S.C. § 387a(b).  By stark contrast, Congress was not even sure that cigars and pipe tobacco should be regulated at all, in any way, but left that issue to

further reasoned study and development of a compelling record by the FDA. *See id.*; *see also* TCA § 2, 123 Stat. at 1776–81 (recitation of Congressional findings focused on cigarettes and underage tobacco use). And even if the agency were to choose to regulate cigars generally, warning labels were not automatic. To the contrary, Congress required the agency to undertake additional study and make additional findings before imposing warning labels on cigars and pipe tobacco. *See* FD&C Act § 906(d)(1)(A)–(B), 21 U.S.C. § 387f(d)(1)(A)–(B). Of course, contrary to the agency's hopeful and incomplete suggestion, the FDA's staff are not the People's elected representatives, and this Court is not somehow "constrained" to adopt their view of the public interest. Opp. 7 (quoting *Golden Gate Rest. Ass'n v. City & Cty. of S.F.*, 512 F.3d 1112 (9th Cir. 2008) ("responsible public officials" in question were legislators)).

Finally, the agency makes the utterly nonsensical claim that Plaintiffs improperly delayed seeking an injunction of the warnings. Plaintiffs timely moved for a preliminary injunction more than ten months before the health warnings' effective date, on the briefing schedule set by the Court. ECF Nos. 57, 61. Plaintiffs did so only after the parties' efforts to find a consensual resolution, accompanied by the agency's agreement to delay compliance deadlines for months, did not completely succeed. ECF Nos. 26, 27, 34. Moreover, Plaintiffs filed the instant motion within a few weeks of this Court's decision and with over two months still remaining until August 10. ECF No. 95.

## III. THE GOVERNMENT'S BRIEF MISSTATES THE STANDARDS GOVERNING A RULE 62(C) APPLICATION IN THE D.C. CIRCUIT

The Government stretches some precedents and ignores others to argue that an injunction pending appeal is procedurally impossible. First, the Government contends that the Court already has effectively decided not to grant an injunction pending appeal. Opp. 2-3. According to the Government's syllogism, the motion for a preliminary injunction is governed under the

same standard as an injunction pending appeal, the Court has denied the preliminary injunction

as moot and resolved the merits, and therefore cannot grant an injunction pending appeal.  Of

course, the Government's analysis would turn Rule 62(c)'s requirement that appellants seek an

injunction pending appeal first from the District Court into a perfunctory waste of time.  That is

plainly not the law.

Second, the Government urges this Court to overturn the D.C. Circuit's governing legal

standard for Rule 62(c).  Opp. 2.  As the D.C. Circuit long ago held, no more than a serious or

substantial question going to the merits must be shown to obtain relief under Rule 62(c) where,

as here, "the balance of hardships tips decidedly toward plaintiff."  *See Wash. Metro. Area*

*Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977); *see also*

*Soundboard Ass'n v. FTC*, 254 F. Supp. 3d 7, 9 (D.D.C. 2017) (Mehta, J.) ("This Circuit has

long adhered to the 'sliding scale' approach . . . .").  The Government's assertion that this rule "is

no longer viable" (Opp. 3) following the Supreme Court's decision in *Winter v. Natural Res.*

*Def. Council, Inc.*, 555 U.S. 7 (2008), overlooks that neither the Supreme Court nor the D.C.

Circuit has ever overruled *Holiday Tours*.  *See League of Women Voters v. Newby*, 838 F.3d 1, 7

(D.C. Cir. 2016) (declining invitation "to abandon the so-called 'sliding-scale' approach," and

noting that "[t]his court . . . has not yet needed to decide this issue"); *Sherley v. Sebelius*, 644

F.3d 388, 393 (D.C. Cir. 2011) (applying "sliding-scale" approach without deciding whether

*Winter* should be read to "preclude continuing adherence"); *Soundboard Ass'n*, 254 F. Supp. 3d

at 10 ("The Circuit has not . . . expressly disavowed adherence to the sliding scale approach.").[1]

---

[1]    Nor is it somehow inevitable that *Holiday Tours* will someday be overruled.  Several of the
Circuits to reach the question have rejected the reading of *Winter* urged by the Government here.
*See, e.g., Reilly v. Harrisburg*, 858 F.3d 173, 177 (3d Cir. 2017) ("*Winter* did not overrule our
balancing-of-the-factors standard."); *McCormack v. Hiederman*, 694 F.3d 1004, 1016 n.7 (9th
Cir. 2012) ("'sliding scale' approach . . . remains valid"); *Citigroup Global Mkts., Inc. v. VCG*

At most, this "remains an open question," *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014), and, unless and until the D.C. Circuit overrules *Holiday Tours*, this Court should continue to follow the sliding-scale approach as the law of the Circuit.  *See Akiachak Native Cmty.*, 995 F. Supp. 2d at 12 ("[T]his Court will also proceed by analyzing the factors on a sliding scale, absent contrary binding authority from the D.C. Circuit."); *Loving*, 920 F. Supp. 2d at 110 (refusing to lift injunction pending appeal where a "serious legal question is presented").

Third, the Government faults Plaintiffs for not having appealed before moving for an injunction pending appeal.  Opp. 3.  Of course, the main event at this stage of the case is the entry of an injunction prior to the August 10 effective date of the warnings requirement. Rule 62(c) effectively requires asking the District Court first, before the Circuit Court. Moreover, no merits briefing and argument schedule in the D.C. Circuit was ever going to beat the August 10 effective date.  The only reason Plaintiffs waited to file the notice was to avoid potential Government procedural and jurisdictional arguments—similar to the many raised by the Government in opposition to an injunction pending appeal—against the District Court taking actions such as its Rule 54 entry of final judgment.   And the Government's reading of Rule 62(c)'s text as requiring the notice of appeal first is contrary to judicial decisions, of which the Government must have been aware.  *See Loving*, 920 F. Supp. at 110 (notice of appeal "not a prerequisite" when "there is reason to believe an appeal will be taken"); *see also Common Cause v. Judicial Ethics Comm.*, 473 F. Supp. 1251, 1254 (D.D.C. 1979) (Rule 62(c) "permits the issuance of an injunction whenever there is reason to believe that an appeal will be taken, even before the actual notice of appeal has been filed"); 11 Charles A. Wright et al., *Fed. Prac. and*

---

*Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 38 (2d Cir. 2010) ("If the Supreme Court had meant . . . to abrogate the more flexible standard for a preliminary injunction, one would expect some reference to the considerable history of the flexible standards applied in this circuit, seven of our sister circuits, and in the Supreme Court itself.").

*Procedure* § 2904 (3d ed. 2018) ("[A]rguments [that a court may not make an order under Rule 62(c) before the appeal has been taken] would make the rule a nullity and are unsound. When there is reason to believe that an appeal will be taken, there is no reason why the district court should not make an order preserving the status quo . . . .").[2]

## IV.   THE COURT SHOULD POSTPONE THE EFFECTIVE DATE OF THE WARNINGS REQUIREMENTS UNDER SECTION 705 OF THE ADMINISTRATIVE PROCEDURE ACT

The Administrative Procedure Act provides this Court with ample authority to require the "prudent course" and "stay the warnings requirement as to premium cigars."  Op. 47.  The Government's arguments against the exercise of this authority are unsound.

First, the Government completely misreads the Supreme Court's decision in *Sampson v. Murray*, 415 U.S. 61 (1974).  Opp. 8.  The Court in *Sampson* did not touch the issue of what standard of review governs postponement of regulatory effective dates under Section 705 of the APA.   Rather, the Court held that Section 705 did not authorize courts to force action by agencies; it could only delay the effective date of existing agency actions.  *See Sampson*, 415 U.S. at 75-76 ("Of course, no court can grant an applicant an authorization which the Commission has refused. . . .   It could not operate as an affirmative authorization of that which the Commission has refused to authorize.").  That is a truism.  *See Heckler v. Chaney*, 470 U.S. 821, 837–38 (1985).  Importantly, what the Government pulled from *Sampson* was a quote from the Supreme Court's prior opinion in *Scripps-Howard Radio, Inc. v. FCC*, which disclaimed any suggestion of what standards govern the granting of section 705 relief:  "We merely recognize

---

[2]    *Artis v. Bernanke*, 161 F. Supp. 3d 97 (D.D.C. 2013) (Opp. 3-4), which denied a Rule 62(c) motion to stay interlocutory orders refusing to compel discovery, is distinguishable.  Unlike in *Artis*, here there was never any reason to doubt that Plaintiffs would appeal.  Indeed, once the Court entered final judgment pursuant to Rule 54(b), Plaintiffs filed their notice of appeal that same day.  ECF Nos. 101, 102.

the existence of the power to grant a stay.  We are not concerned here with the criteria which should govern the Court in exercising that power."  316 U.S. 4, 17 (1942).  Instead, the standard of review for a stay pursuant to Section 705 is an open question that the D.C. Circuit and the Supreme Court have yet to address.

As meritless is the Government's parsing of Plaintiffs' Complaint.  Plaintiffs clearly challenged enforcement of the warnings requirement as arbitrary and capricious under the APA. *See*, *e.g.*, Compl. ¶¶ 4, 53, 132, 140, 141.  The Government seems to claim that the Complaint needs to set forth every legal reason the warnings requirements are arbitrary and capricious.  But that is what legal briefs are for.  And the Government's contention cannot be squared with the notice pleading requirements of Federal Rule of Civil Procedure 8.  *See Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument.").

Count V of the Complaint (which addresses the FDA's arbitrary and capricious decision not to exempt a category of cigars from the rule) is also a perfectly valid ground for relief.  The Government's claim that its merits have never been explained overlooks the motion for summary judgment Plaintiffs filed in February 2017.  ECF No. 22.

## CONCLUSION

For the foregoing reasons and those set forth in their opening brief, Plaintiffs respectfully request that the Court grant the motion, enter the appropriate option presented in Plaintiffs' Proposed Order, and grant Plaintiffs such other and further relief as this Court deems just and proper.

Dated: June 29, 2018

Respectfully submitted,

/s/ *Michael J. Edney*
Michael J. Edney, DC Bar No. 492024
Ryan E. Meltzer, Texas Bar No. 24092821
NORTON ROSE FULBRIGHT US LLP
799 9th Street, NW, Suite 1000
Washington, DC 20001-4501
Telephone:  (202) 662-0200
Fax:  (202) 662-4643
michael.edney@nortonrosefulbright.com
ryan.meltzer@nortonrosefulbright.com

*Attorneys for Plaintiffs International Premium*
*Cigar and Pipe Retailers Association and*
*Cigar Rights of America*

/s/ *Mark S. Raffman*
Mark S. Raffman, DC Bar No. 414578
Andrew Kim, DC Bar No. 1029348
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC 20001
Telephone:  (202) 346-4000
Fax:  (202) 346-4444
mraffman@goodwinlaw.com
andrewkim@goodwinlaw.com

*Attorneys for Plaintiff Cigar Association of*
*America*