IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CIGAR ASSOCIATION OF AMERICA, PREMIUM CIGAR ASSOCIATION, and CIGAR RIGHTS OF AMERICA, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES FOOD AND DRUG ADMINISTRATION, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services Office of the Secretary, and ROBERT M. CALIFF, M.D., in his official capacity as Commissioner of Food and Drugs, <br><br> Defendants.[1] | Civ. No. 1:16-cv-01460-APM |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ADDRESSING FDA-COMMISSIONED REPORT OF THE NATIONAL ACADEMIES OF SCIENCES, ENGINEERING, AND MEDICINE**

Plaintiffs the Premium Cigar Association, Cigar Rights of America, and the Cigar Association of America submit this supplemental memorandum in support of their motion for summary judgment challenging the FDA's 2016 decision to reject its own proposed Option 2 and thereby to subject premium cigars to the same regulatory system Congress designed for cigarettes. This memorandum addresses an intervening development since the completion of briefing in 2021.

This case started in 2016 months after the FDA announced its sweeping regulation of premium cigars. From almost the beginning of this case, the FDA has recognized that there are

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Plaintiffs substitute Xavier Becerra and Robert M. Califf, M.D., for their predecessors in office.

1

serious questions to be answered about premium cigar patterns of use and the regulations appropriate to address them.  The FDA asked these questions in the 2014 Proposed Rule, but then did not meaningfully answer them in its 2016 Final Rule.  Therein, the FDA rejected Option 2 and cast premium cigars into a regulatory system designed for very different tobacco products.

In the 2016 Final Rule, the FDA ignored evidence in the record showing patterns of premium cigar use that result in lower health risks.  The record leading to the rulemaking had the same type of evidence—that premium cigar consumers use the product very infrequently—that the FDA later said it wished it had before determining how premium cigars should be regulated. Advanced Notice of Proposed Rulemaking, Regulation of Premium Cigars, 83 Fed. Reg. 12,901, 12,902-03 (Mar. 26, 2018); Mem. in Support of Pls.' Mot. for Summ. J. and for a Permanent Injunction, ECF 247-1 at 15-16, 24-25.  The FDA's response to this realization was to successively open a rulemaking, announce an FDA research project with an opportunity for public input, abandon that research project, and then commission the National Academies of Sciences, Engineering and Medicine ("NASEM") to study key questions left unanswered since the 2014 Proposed Rule.  Pls.' Supp. Mem. Responding to the Defs.' June 11 Premium Cigar Announcement and July 30 Notice of Supp. Authority, ECF 261 at 2-3.

On March 10, 2022, NASEM issued its report analyzing the different patterns of use of premium cigars and how those patterns of use may affect health.  NASEM, *Premium Cigars: Patterns of Use, Marketing and Health Effects* (2022) (attached hereto as Ex. A).  The NASEM report further illustrates that the FDA erred in its 2016 Final Rule when it concluded "there were no data provided to support the premise that there are different patterns of use of premium cigars

and that these patterns result in lower health risks."[2]  Final Rule, 81 Fed. Reg. 28,973, 29,020 (May 10, 2016).  In that regard, the NASEM report provides further and additional evidence confirming the key conclusion of the Corey study that was in the record before the agency in 2016:  That premium cigar consumers use the product very infrequently and very few use the product daily. *See* Catherine G. Corey, et al., *Little Filtered Cigars, Cigarillo, and Premium Cigar Smoking Among Adults—United States, 2012-2013*, 63 Morbidity and Mortality Weekly Report, No. 30, 650-54 (2014) (in the Administrative Record at AR 022253-57) ("Corey 2014"); *see also* ECF 247-1 at 21-28.  Taking up and applying in material part study methods underlying the Corey report in the Final Rule record, NASEM analyzes the most recent data from the Population Assessment of Tobacco and Health Survey ("PATH").  NASEM at 413 (tracing study methodology to Ms. Corey's work).  NASEM's analysis, in turn, showed only 3.5 percent of premium cigar consumers use the product daily; the median consumer uses premium cigars one day per month and only 0.1 premium cigars per day (compared to 10 per day for the median consumer of cigarettes).  NASEM at 114.  These figures are right in line with the Corey study in the Final Rule record, which concluded that 3.3 percent of premium cigar consumers use the product daily and 71.2 percent use the product less than once per month.  Corey 2014 at AR 0222255.

NASEM also reached the obvious conclusion that "[t]he extent of inhalation and the frequency and duration of use are major factors in determining whether tobacco smoking will cause disease."  NASEM at 205.  In support of this conclusion, NASEM cited the 1998 National Cancer Institute (NCI) Tobacco Control Monograph 9, *Cigars: Health Effects and Trends*, which

---

[2] Indeed, the NASEM report reached the following conclusion: "Premium cigars currently have a different pattern of use than other cigar products and therefore result in different health effects."  NASEM at 313.

was in the Final Rule record (AR 021077-324) ("Monograph 9"). *Id.* at 70 (citing Monograph 9 at 97); ECF 247-1 at 13, 23, 26-27. NASEM reviewed all studies available to date regarding the effect of infrequent cigar use on health, noting the record-evidence conclusion of Monograph 9 that smoking two or fewer cigars per day was not associated with a statistically significant increase in mortality. NASEM at 215; *see also* Proposed Rule, 79 Fed. Reg. 23,142, 23,151 (Apr. 25, 2014); Final Rule, 81 Fed. Reg. at 29,024 (noting that this Monograph 9 data was part of the Final Rule Record); Monograph 9 at AR 021203. NASEM also cited the 2018 Journal of the American Medical Association study reaching a similar conclusion as to non-daily cigar use. NASEM at 214; *see also* ECF 247-1 at 23-24 (discussing the study). In the end, NASEM concluded:

> (1) that "[t]here is insufficient evidence to determine if occasional or nondaily exclusive cigar use in general is associated with increased health risks" of any kind, and;
>
> (2) with respect to premium cigars in particular, that "[t]here is strongly suggestive evidence that the health consequences of premium cigar smoking overall are likely to be less than those [of] smoking other types of cigars because the majority of premium cigar smokers are nondaily or occasional users and because they are less likely to inhale the smoke."

NASEM at 16, 244-45 (emphasis omitted).

NASEM also examined the important question of what, if any, youth usage of premium cigars exists. NASEM reported that "[p]ast 30-day use of premium cigars was very rare (0.1 percent or less) among those under 18 or women." NASEM at 113. Indeed, when NASEM reported these data in greater detail, it showed that there was no statistically significant usage of premium cigars by youth. *Id.* at 398 (recording the confidence interval for premium cigar usage by those aged 12 to 17 as *0.0 percent to 0.1 percent*). NASEM also concluded that the median age of first use of premium cigars was 25 years old, compared with 17 years old for cigarettes. *Id.* at 114. These data are consistent with evidence in the record leading the 2016 Final Rule from an

4

earlier version of the same data set, which showed, at most, an almost immeasurable 0.1 percent of youth using premium cigars.  ECF 247-1 at 29-30.  Yet the FDA nonetheless concluded that "youth … are [] using premium cigars."  81 Fed. Reg. at 29,023.  That conclusion is arbitrary and capricious, as NASEM appropriately recognized youth usage of premium cigars, to the extent it even exists, is "very rare" and that there is "insufficient evidence" to draw any conclusions "on the health effects of premium cigars on youth."  NASEM at 113, 17.

When trying to resuscitate the FDA's analysis in the Final Rule, government litigation counsel turned to the issue of premium cigar consumers who also use cigarettes.  Mem. in Opp. to Pls.' Mot. for Summ. J. and for a Permanent Injunction, ECF 250-1 at 16.  NASEM also addressed this issue and explained that "premium cigar consumers are more likely to be never or former cigarette consumers than users of other cigar products."  NASEM at 130.  NASEM relied on key data showing that, in the most recent wave of the PATH study, approximately 20.7 percent of premium cigar consumers use other tobacco products, including cigarettes, smokeless tobacco, and e-cigarettes.  *Id.* at 119.  That is higher than the overall U.S. population, but only incrementally, as that number is 16.7 percent.  *Id.* at 120.  But it is vastly lower than the dual use numbers for non-premium cigar (54.7 percent) or filtered cigar (72.7 percent) consumers.  *Id.*

In the end, NASEM recommended a series of scientific inquiries that should be undertaken before firm decisions are made on how to regulate premium cigars.  *Id.* at 19-25.  The problem is that the FDA already made a decision, frankly without the data that would answer the key questions about the different patterns of use of premium cigars and their effect on public health the FDA identified in the Proposed Rule.  This "ready, fire, aim" approach is the definition of "arbitrary and capricious" decisionmaking.  The result is a complete regulatory mismatch.  As the Chair of the NASEM Committee producing this FDA-requested report explained: "Since only a small

proportion of the population smokes premium cigars — and of those who do, most smoke only a small number each month — the aggregate health effects in the population are modest." *See* NASEM, *Q&A: National Academies Study Examines the Patterns of Use, Marketing, and Health Effects of Premium Cigars* (Mar. 10, 2022) (attached hereto as Exhibit B).  But the costs and burdens of the regulatory scheme on small business manufacturers and retailers that make up the premium cigar industry are massive.

This Court should vacate and remand the Final Deeming Rule with respect to premium cigars so the FDA, working with NASEM if it wishes, can answer the questions it said were important in the Proposed Rule before imposing a detailed regulatory regime on these products.

Date:  April 27, 2022

Respectfully submitted,

/s/ *Michael J. Edney*
Michael J. Edney, DC Bar No. 492024
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
medney@steptoe.com

*Attorney for Plaintiffs Premium Cigar Association and Cigar Rights of America*

/s/ *Brian T. Burgess*
Brian Burgess, DC Bar No. 1020915
Andrew Kim, DC Bar No. 1029348
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
Telephone:  (202) 346-4000
Fax:  (202) 346-4444
bburgess@goodwinlaw.com
andrewkim@goodwinlaw.com

*Attorneys for Plaintiff Cigar Association of America*

## **CERTIFICATE OF SERVICE**

I, Michael J. Edney, an attorney, hereby certify that on April 27, 2022, I caused a true and correct copy of the foregoing memorandum to be served via Court's ECF system upon all counsel of record.

*/s/ Michael J. Edney*
