IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CIGAR ASSOCIATION OF AMERICA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES FOOD AND DRUG ADMINISTRATION, *et al.*,<br><br>Defendants. | Civil Action No. 16-1460 (APM) |

**DEFENDANTS' REMEDY BRIEF**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ iii

INTRODUCTION ...............................................................................................................................1

ARGUMENT........................................................................................................................................2

    A.    The disruptive consequences of vacating all federal regulation of premium cigars support remand without vacatur................................................................................ 2

        1.    Vacatur would cause serious public health harms, including allowing premium cigar sales to those under age 21 ................................................. 2

        2.    Preserving the status quo would not impose significant burdens on premium cigar manufacturers ..................................................................... 4

        3.    Vacatur could shift user fees to manufacturers of other tobacco products and would almost certainly give rise to additional litigation ..................... 5

    B.    On remand, the FDA can readily cure the APA violation found by the Court ....... 8

CONCLUSION...................................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Air Transport Ass'n of America v. USDA*,
   317 F. Supp. 3d 385 (D.D.C. 2018) ...................................................................................... 7

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*,
   988 F.2d 146 (D.C. Cir. 1993) ...................................................................................... 2, 8, 9

*Cigar Association of America v. FDA* (*Cigar I*),
   315 F. Supp. 3d 143 (D.D.C. 2018) .................................................................................. 5, 8

*Cigar Association of America v. FDA* (*Cigar II*),
   436 F. Supp. 3d 70 (D.D.C. 2020) ....................................................................................... 4

*Cigar Association of America v. FDA* (*Cigar III*),
   480 F. Supp. 3d 256 (D.D.C. 2020) .................................................................................. 4, 5

*Cigar Association of America v. FDA*,
   5 F.4th 68 (D.C. Cir. 2021) .................................................................................................. 5

*Cigar Association of America v. FDA* (*Cigar IV*),
   No. 16-cv-1460, 2022 WL 2438512 (D.D.C. July 5, 2022) .............................................. 9, 10

*Fox Television Stations, Inc. v. FCC*,
   280 F.3d 1027 (D.C. Cir. 2002) ........................................................................................... 9

*Humane Society of the United States v. Zinke*,
   865 F.3d 585 (D.C. Cir. 2017) ............................................................................................. 2

*International Union, United Mine Workers of America v. Federal Mine Safety & Health Administration*, 920 F.2d 960 (D.C. Cir. 1990) ........................................................... 2

*Nicopure Labs, LLC v. FDA*,
   266 F. Supp. 3d 360 (D.D.C. 2017) ..................................................................................... 3

*Orton Motor, Inc. v. HHS*,
   884 F.3d 1205 (D.C. Cir. 2018) ........................................................................................... 4

*Prohibition Juice Co. v. FDA*,
   No. 21-1201, 2022 WL 2920823 (D.C. Cir. July 26, 2022) ........................................ 3, 9, 10

*Shands Jacksonville Medical Center v. Burwell*,
   139 F. Supp. 3d 240 (D.D.C. 2015) ..................................................................................... 2

*Shinseki v. Sanders*,
   556 U.S. 396 (2009) ........................................................................................................... 10

*Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*,
  282 F. Supp. 3d 91 (D.D.C. 2017) ...................................................................................9

*Sugar Cane Growers Cooperative of Florida v. Veneman*,
  289 F.3d 89 (D.C. Cir. 2002) ...........................................................................................8

*Williston Basin Interstate Pipeline Co. v. FERC*,
  519 F.3d 497 (D.C. Cir. 2008) .........................................................................................9

*WorldCom, Inc. v. FCC*,
  288 F.3d 429 (D.C. Cir. 2002) .........................................................................................8

**Statutes, Rules, and Other Authorities**

Further Consolidated Appropriations Act, 2020, Pub. L. 116-94, 133 Stat. 2534 ............4

7 U.S.C. § 518d ...................................................................................................................6

21 U.S.C. § 387a ............................................................................................................2, 5

21 U.S.C. § 387c ............................................................................................................3, 5

21 U.S.C. § 387d ................................................................................................................4

21 U.S.C. § 387e ................................................................................................................4

21 U.S.C. § 387f ............................................................................................................2, 5

21 U.S.C. § 387j .................................................................................................................4

21 U.S.C. § 387k ...........................................................................................................3, 5

21 U.S.C. § 387*o* ...............................................................................................................4

21 U.S.C. § 387s ........................................................................................................6, 7, 8

26 U.S.C. § 5701 ................................................................................................................7

21 C.F.R. § 1140.14 ...........................................................................................................2

21 C.F.R. § 1140.16 ...........................................................................................................2

21 C.F.R. § 1143.5 .............................................................................................................4

21 C.F.R. § 1150.5 .............................................................................................................7

21 C.F.R. § 1150.9 .........................................................................................................6, 8

81 Fed. Reg. 28,707 ...........................................................................................................7

81 Fed. Reg. 28,973 ..............................................................................................................10

U.S. Centers for Disease Control and Prevention,
    STATE System Minimum Legal Sales Age (MLSA) Laws for Tobacco Products Fact Sheet,
    https://perma.cc/8QK8-8P23 ............................................................................................3

U.S. Food and Drug Administration,
    Guidance for Industry: FDA Deems Certain Tobacco Products Subject to FDA Authority,
    Sales and Distribution Restrictions, and Health Warning Requirements for Packages and
    Advertisements (Revised), https://perma.cc/YJ46-VZ7A ..........................................................4

U.S. Food and Drug Administration,
    Tobacco User Fee Assessment Formulation by Product Class,
    https://perma.cc/3TSB-XR47..............................................................................................8

Cigar Association of America,
    Cigars at a Glance: Cigar Sales Over the Years, https://perma.cc/QG8V-UHKQ ....................8

# INTRODUCTION

Remand without vacatur is the appropriate remedy in this case because vacatur would significantly disrupt Congress's efforts to mitigate the public health harms caused by tobacco products and because the FDA can readily respond to comments arguing that premium cigars should not be regulated due to their usage patterns.

Vacatur would cause serious public health harms by making the deeming rule inapplicable to premium cigars, leaving them entirely unregulated. Among other things, vacatur would mean that the federal minimum-age requirement for tobacco product sales would not apply to premium cigars, allowing sales of those products to people under 21 under federal law. By contrast, maintaining the status quo as it has existed for the past six years would impose no significant burdens on premium cigar manufacturers because the requirements triggered by deeming largely consist of either one-time obligations that manufacturers have already satisfied or prohibitions that impose no out-of-pocket costs. While Plaintiffs might contend that vacatur would exempt premium cigar manufacturers from user fees under the Tobacco Control Act, which average half a cent per cigar, this consideration in fact cuts against vacatur. Under the Act's zero-sum user fee allocation scheme, vacating the decision to deem premium cigars would at most shift the user fees from premium cigar manufacturers to other manufacturers and would all but guarantee additional litigation over those fees.

Finally, the likelihood that the agency can cure the defect found by the Court by addressing the record evidence about premium cigar usage patterns and the health risks associated with those patterns further renders vacatur inappropriate. The decision to deem premium cigars should therefore be remanded to the FDA without vacatur.

# ARGUMENT

While vacatur is the normal remedy for APA violations, a rule found to violate the APA "need not necessarily be vacated." *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993). The D.C. Circuit has "commonly remanded without vacating an agency's rule or order where" — as here — "the failure lay in lack of reasoned decisionmaking." *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 966–67 (D.C. Cir. 1990) (citations omitted). As this Court has explained, "[a] court's decision to 'remand without vacatur depend[s] upon the seriousness of the [rule's] deficiencies' and 'the disruptive consequences of vacating the [r]ule.'" ECF No. 228 at 2 (quoting *Humane Soc'y of U.S. v. Zinke*, 865 F.3d 585, 614 (D.C. Cir. 2017) (second alteration in original)). While "[t]here is no rule requiring either the proponent or opponent of vacatur to prevail on both factors," *Shands Jacksonville Med. Ctr. v. Burwell*, 139 F. Supp. 3d 240, 270 (D.D.C. 2015), both factors weigh against vacatur here.

### A.   The disruptive consequences of vacating all federal regulation of premium cigars support remand without vacatur

Vacating the decision to deem premium cigars is inappropriate here because it would have serious disruptive consequences, while remanding without vacatur would impose little burden on Plaintiffs.

#### 1.   *Vacatur would cause serious public health harms, including allowing premium cigar sales to those under age 21*

Deeming premium cigars is what makes them subject to the requirements of Chapter IX of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 387a(b), including:

- the minimum age of sale (*id.* § 387f(d)(5));
- the ban on free samples and restriction on vending machine sales (21 C.F.R. §§ 1140.16(d), 1140.14(b)(3));

- the ban on false or misleading labeling and advertising (21 U.S.C. § 387c(a)(1), (a)(7)(A)); and
- the ban on sales of products described as posing a modified risk without authorization (*id.* § 387k).

Vacating the deeming rule as it applies to premium cigars would leave that category of tobacco products entirely unregulated at the federal level. Most critically, vacatur would make it legal under federal law to sell premium cigars to youth and young adults under age 21. It would also permit all vending machine sales of premium cigars and free samples of premium cigars, which have been banned since the deeming rule took effect in 2016. With premium cigars uniquely free of these federal restrictions, the predictable result would be an increase in youth and young adult use — and the health risks associated with that use. *See Prohibition Juice Co. v. FDA*, No. 21-1201, 2022 WL 2920823, at *3 (D.C. Cir. July 26, 2022) (noting fluidity of youth tobacco usage patterns). Vacatur would also allow premium cigar manufacturers "to mislabel their products without consequence." *Nicopure Labs, LLC v. FDA*, 266 F. Supp. 3d 360, 394 (D.D.C. 2017), *aff'd*, 944 F.3d 267 (D.C. Cir. 2019).

At oral argument, Plaintiffs claimed that eliminating the federal minimum age of sale for premium cigars would have little effect because "almost every state" has raised the state-law minimum age of sale to 21 due to fiscal incentives in federal appropriations bills. Hr'g Tr., ECF No. 267, at 75. In fact, however, twelve states and four territories have not raised their minimum age of sale to 21, notwithstanding these incentives. *See* U.S. Ctrs. for Disease Control and Prevention, STATE System Minimum Legal Sales Age (MLSA) Laws for Tobacco Products Fact Sheet (last visited July 20, 2022), https://perma.cc/8QK8-8P23. Vacating the decision to deem premium cigars would thus make it lawful for retailers to sell premium cigars to 18- to 20-year-olds in these jurisdictions. Also, by removing premium cigars from the category of deemed tobacco products, vacatur would eliminate the federal fiscal incentives for other states and

3

territories to maintain their premium cigar minimum age of sale at 21. *See* Further Consolidated Appropriations Act, 2020, Pub. L. 116-94, 133 Stat. 2534, Sec. 604. And vacatur would leave the FDA powerless to take enforcement action against illegal underage sales in jurisdictions that fail to enforce their minimum age of sale laws (whatever the age). *See Orton Motor, Inc. v. HHS*, 884 F.3d 1205, 1208–09 (D.C. Cir. 2018) (explaining federal penalties authorized by Congress for violations of Tobacco Control Act).

### 2. *Preserving the status quo would not impose significant burdens on premium cigar manufacturers*

These serious public health harms that would follow from vacatur substantially outweigh the modest effects on premium cigar manufacturers from maintaining the status quo as it has existed for the past six years. The health warnings requirement (21 C.F.R. § 1143.5) and the premarket authorization requirement (21 U.S.C. § 387j(a)(2)) have been vacated or enjoined as to premium cigars. *See Cigar Ass'n of Am. v. FDA*, 436 F. Supp. 3d 70, 89–90 (D.D.C. 2020) (*Cigar II*); *Cigar Ass'n of Am. v. FDA*, 480 F. Supp. 3d 256, 280–82 (D.D.C. 2020) (*Cigar III*). Most of the reporting requirements triggered by the deeming decision (21 U.S.C. §§ 387d, 387e, 387*o*) are one-time obligations that do not impose significant ongoing costs on premium cigar manufacturers, as the Court suggested at oral argument.[1] Hr'g Tr., ECF No. 267, at 29–33, 70–

---

[1] At oral argument, Plaintiffs suggested that there are ongoing burdens from two of these reporting requirements — the requirement to report hazardous and potentially hazardous constituents (21 U.S.C. § 387d(a)(3)) and the requirement to report ingredient lists (*id.* § 387d(a)). Hr'g Tr., ECF No. 267, at 31–33. But the FDA is exercising its discretion to generally not enforce the HPHC reporting requirement until after it issues additional guidance. *See* FDA, Guidance for Industry: FDA Deems Certain Tobacco Products Subject to FDA Authority, Sales and Distribution Restrictions, and Health Warning Requirements for Packages and Advertisements (Revised), at 33–34 (revised Oct. 2020), https://perma.cc/YJ46-VZ7A. And the requirement to report ingredient lists arises only when a manufacturer introduces a new product, not when the manufacturer continues to sell a product for which it has already reported ingredients. 21 U.S.C. § 387d(c). In any event, even when a manufacturer introduces a new premium cigar product, there is no significant burden from listing the ingredients of a product

4

73. And there are no out-of-pocket costs associated with continuing to comply with the prohibitions triggered by deeming, like the bans on selling to underage persons (*id.* § 387f(d)(5)), selling adulterated or misbranded products (*id.* §§ 387b–387c), selling products described as modified risk without authorization (*id.* § 387k), and providing free samples (21 C.F.R. § 1140.16(d)).[2]

### 3. *Vacatur could shift user fees to manufacturers of other tobacco products and would almost certainly give rise to additional litigation*

Plaintiffs may contend that vacating the decision to deem premium cigars would exempt premium cigar manufacturers from paying the user fees mandated by the Tobacco Control Act and the FDA's user fee rule.[3] This contention would likely rely on the section of the Act providing that "no user fees shall be assessed on a class of tobacco products unless such class of tobacco products … is deemed by the Secretary in a regulation under section 387a(b) of this title

---

that by definition "contains only tobacco, water, and vegetable gum with no other ingredients or additives." *Cigar III*, 480 F. Supp. 3d at 281.

[2] If anything, vacatur could impose practical burdens on retailers who sell both premium cigars and other tobacco products. For example, if the Court were to adopt the same eight-pronged definition used in its August 2020 opinion, retailers would have to make difficult decisions at the cash register about whether particular cigars satisfy the definition and thus could lawfully be sold to young adults. *See Cigar III*, 480 F. Supp. 3d at 281 (defining "premium cigar" as one that "(1) is wrapped in whole tobacco leaf; (2) contains a 100 percent leaf tobacco binder; (3) contains at least 50 percent (of the filler by weight) long filler tobacco (i.e., whole tobacco leaves that run the length of the cigar); (4) is handmade or hand rolled (i.e., no machinery was used apart from simple tools, such as scissors to cut the tobacco prior to rolling); (5) has no filter, nontobacco tip, or nontobacco mouthpiece; (6) does not have a characterizing flavor other than tobacco; (7) contains only tobacco, water, and vegetable gum with no other ingredients or additives; and (8) weighs more than 6 pounds per 1,000 units").

[3] Plaintiffs have already brought two claims challenging user fees for cigars, both of which were unsuccessful. *See Cigar Ass'n of Am. v. FDA*, 315 F. Supp. 3d 143, 177–82 (D.D.C. 2018) (*Cigar I*), *aff'd*, 5 F.4th 68, 78 (D.C. Cir. 2021).

5

to be subject to this subchapter." 21 U.S.C. § 387s(b)(2)(B)(iii). But this contention cuts against vacatur because of the Act's zero-sum user fee scheme.

Congress set the total amount of user fees that the FDA must assess each year, as well as the methodology for determining how that total amount is allocated to each "class of tobacco products" identified in the statute (e.g., cigarettes, cigars, pipe tobacco) and to each manufacturer within each class.[4] *Id.* § 387s. Under this scheme, if a class of tobacco products were exempt from paying user fees by virtue of not being deemed, the Act would expressly require the fees for those products to be reallocated to the classes of tobacco products that are subject to Chapter IX of the Federal Food, Drug, and Cosmetic Act. *Id.* § 387s(b)(2)(B)(iv). And within a particular class of tobacco products, each manufacturer's fee assessment is calculated as a proportion of the total fees allocated to the class. *Id.* § 387s(b)(4); 21 C.F.R. § 1150.9. Thus, even if it were possible under the statute to exempt premium cigars from user fees when other cigars remain deemed, any fees avoided by premium cigar manufacturers due to vacatur would presumably be shifted to manufacturers of other products, whether in the same class or in other classes.[5]

This zero-sum user fee scheme also means that vacating the decision to deem premium cigars would all but guarantee additional litigation over user fees. If the FDA attempted to shift fees to non-premium cigar manufacturers or manufacturers of other tobacco products, the agency

---

[4] The Tobacco Control Act's allocation methodology incorporates the allocation methodology of the Fair and Equitable Tobacco Reform Act of 2004, which in turn references provisions of the Internal Revenue Code. 21 U.S.C. § 387s(b)(2)(B)(ii), (b)(4) (relying on 7 U.S.C. § 518d, which references 26 U.S.C. chapter 52).

[5] These other manufacturers who could end up bearing the user fees currently paid by premium cigar manufacturers might include members of Plaintiff Cigar Association of America, which claims to have "member companies from all sectors of the industry, from manufacturers of handmade premium cigars to producers of machine-made small cigars." 4th Am. Compl. ¶ 9, ECF No. 236.

would likely face claims — like the one brought by Plaintiffs in connection with the FDA's decision not to assess user fees for e-cigarette manufacturers — challenging the shift. *See* 21 U.S.C. § 387s(b).

Moreover, if Plaintiffs were correct that vacatur would exempt premium cigars from user fees, shifting the user fees currently paid by premium cigar manufacturers to manufacturers of other tobacco products would likely be impossible in the short term and more burdensome for both the FDA and manufacturers in the long term. The Act's user fee calculation methodology is based on excise taxes, but neither excise tax law nor the excise tax information currently submitted to the FDA by rule distinguishes between premium cigars and other cigars. 21 U.S.C. § 387s(b)(5); 26 U.S.C. § 5701(a); 21 C.F.R. § 1150.5(b)(2); *see also* 81 Fed. Reg. 28,707, 28,713 (May 10, 2016) (noting that rule requiring cigar manufacturers and importers to submit general excise tax information to FDA for user fee calculations is premised on the fact that "[a]ll cigars" — including premium cigars — "have been deemed subject to FDA's regulation and, as such, are subject to user fees under" the Act). This information would not be granular enough to allow the FDA to shift premium cigar user fees to manufacturers of other products if premium cigars were exempt from user fees by virtue of not being deemed. The FDA would thus need to devise some new method to calculate each manufacturer's user fees — perhaps including new rulemaking proceedings to implement any such method and to require manufacturers to submit more detailed information needed to perform those calculations.

These considerations illustrate why "[c]ases that involve fee collection" — and "especially … agency collection of fees" — "are particularly appropriate for remand without vacatur." *Air Transp. Ass'n of Am. v. USDA*, 317 F. Supp. 3d 385, 392 (D.D.C. 2018) (citation omitted). Given the Act's zero-sum user fee scheme, vacating the decision to deem premium

7

cigars would be "an invitation to chaos," *Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002), which substantially outweighs Plaintiffs' interest in attempting to avoid user fees during remand. These user fees are on average only $0.005 per cigar.[6] Under the status quo, the smallest manufacturers and importers are already excluded from paying user fees. 21 C.F.R. § 1150.9(a)(3). And for premium cigar manufacturers who are not excluded, the relatively minimal size of these user fees is perhaps best illustrated by Plaintiffs' litigation choices in this case, where they waited over two years to seek an appealable final judgment on their user fee challenges (while more quickly seeking an appealable final judgment on their other challenges) and three more years to press their challenge to the decision to deem premium cigars. *See Cigar I*, 315 F. Supp. 3d at 177–82; ECF No. 215; ECF No. 82; ECF No. 247.

### B. On remand, the FDA can readily cure the APA violation found by the Court

The other factor in the vacatur inquiry — the seriousness of the rule's deficiencies — focuses on the likelihood that the agency can substantiate its decision on remand. *Allied-Signal*, 988 F.2d at 151. The D.C. Circuit has made clear that this is not a demanding standard, and the agency need not conclusively establish that it will be able to justify its decision on remand. Instead, the question is whether it is "conceivable" or there is "at least a serious possibility that the [agency] will be able to substantiate its decision on remand." *Id.* Indeed, remand without vacatur is appropriate even if there is only "a non-trivial likelihood," *WorldCom, Inc. v. FCC*, 288 F.3d 429, 434 (D.C. Cir. 2002), or a "significant possibility" that the agency can adequately

---

[6] The Tobacco Control Act sets the total annual user fees for all classes of tobacco products at $712 million. 21 U.S.C. § 387s(b)(1)(K)). Of that total, for fiscal year 2022, 12.1564%, or about $86.5 million, is allocated to cigars as a class. FDA, Tobacco User Fee Assessment Formulation by Product Class (last updated Aug. 31, 2021), https://perma.cc/3TSB-XR47; 21 U.S.C. § 387s(b)(2)(B)(ii) (allocation methodology). According to Plaintiffs, there are about 15.25 billion cigars sold in the U.S. each year. Cigar Ass'n of Am., Cigars at a Glance: Cigar Sales Over the Years (last visited July 26, 2022), https://perma.cc/QG8V-UHKQ.

explain its decision on remand, *Williston Basin Interstate Pipeline Co. v. FERC*, 519 F.3d 497, 504 (D.C. Cir. 2008). When this factor favors remand without vacatur, vacatur is generally "not appropriate" even if the disruption factor might support vacatur. *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 282 F. Supp. 3d 91, 108 (D.D.C. 2017) ("[I]n circumstances where the first prong of *Allied-Signal* supports remand without vacatur, the second prong 'is only barely relevant' [because] 'though the disruptive consequences of vacatur might not be great, the probability that the [agency] will be able to justify retaining [its prior decision] is sufficiently high that vacatur … is not appropriate.'") (quoting *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1049 (D.C. Cir. 2002) (second alteration added)).

  Here, if the Solicitor General decides against appeal from the final judgment, the FDA can readily cure the error found by the Court on remand by adequately addressing the record evidence on premium cigar usage patterns and the health risks associated with those patterns. Importantly, while the Court concluded that the FDA did not adequately address certain evidence, the Court did not find that the record evidence was insufficient to justify regulation of premium cigars under federal law. *Cigar Ass'n of Am. v. FDA*, No. 16-cv-1460, 2022 WL 2438512, at *4–7 (D.D.C. July 5, 2022) (*Cigar IV*). To the contrary, it is undisputed that tobacco — the primary ingredient in premium cigars — "is highly addictive and generally harmful to human health." *Prohibition Juice*, 2022 WL 2920823, at *3. Premium cigars expose users to tobacco smoke, nicotine, toxins, and carcinogens, and the record evidence includes studies showing elevated health risks even for those who smoke cigars infrequently, as the Court suggested at oral argument, as well as studies showing that over 120,000 U.S. adults smoke premium cigars every day. Hr'g Tr., ECF No. 267, at 12; *Cigar IV*, 2022 WL 2438512, at *5.

9

The FDA will properly address this evidence on remand if the government decides not to appeal and the Court remands without vacatur.

In addition, the Court did not suggest any deficiency in the FDA's other rationales for deeming premium cigars, including: (a) the agency's "concern[] about" "dual and polyuse of cigars and other tobacco products," which the record evidence indicated "is common among both adults and youth," 81 Fed. Reg. 28,973, 29,022 (May 10, 2016); (b) the fact that, regardless of usage patterns, "[a]ll cigars produce secondhand smoke, which causes negative health effects such as heart disease and lung cancer in bystanders," *id.*; and (c) the agency's finding that the record evidence "clearly illustrates that young adults are using premium cigars," *id.* at 29,023.[7] *See generally Cigar IV*, 2022 WL 2438512. On remand, the FDA could further elaborate on these additional rationales supporting the deeming decision. Indeed, for these reasons, the FDA's failure to discuss the studies concerning usage patterns noted by the Court is properly regarded as harmless. *See Prohibition Juice*, 2022 WL 2920823, at *12 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

There is thus more than a non-trivial likelihood that the FDA on remand can adequately explain why premium cigars should not go entirely unregulated under federal law, rendering vacatur inappropriate. The FDA would intend to do so promptly if the government determines not to appeal and this Court remands without vacatur.

## CONCLUSION

The FDA's decision to deem premium cigars should be remanded without vacatur.

---

[7] While the Court questioned the characterization of statistics in the FDA's finding about youth usage of premium cigars, it did not conclude that the finding violated the APA, and the Court suggested that the agency could properly address the record evidence about youth usage on remand. *Cigar IV*, 2022 WL 2438512, at *8.

10

Dated: August 2, 2022

Of counsel:

SAMUEL R. BAGENSTOS
General Counsel
U.S. Dep't of Health and Human Services

MARK RAZA
Chief Counsel
Food and Drug Administration

WENDY S. VICENTE
Acting Deputy Chief Counsel for Litigation

PETER DICKOS
Associate Chief Counsel

Office of the Chief Counsel
Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993-0002

Respectfully submitted,

BRIAN D. NETTER
Deputy Assistant Attorney General

ERIC B. BECKENHAUER
Assistant Branch Director

 /s/ *Garrett Coyle*
GARRETT COYLE
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 616-8016
garrett.coyle@usdoj.gov

*Counsel for Defendants*